# Collingwood *against* Irwin.

In an action against a grantor for a breach of the covenant of general warranty in a deed, it is not competent for the grantor to prove, by oral testimony, that, at the time he executed the deed, he assigned to the grantee a judgment against a third person, which the grantee accepted as his sole security, and agreed never to hold the grantor liable on the covenant.

It is competent, however, for the grantor to show that the judgment, when assigned, was a lien upon real estate equal in value *to its amount*, but, through the negligence of the grantee, had lost its lien and become worthless.

Evidence may also be admitted, that the title conveyed by the grantor's deed to the grantee, is better than a title held by a third person, under which the grantee had been evicted from the land in an action of ejectment, of the pendency of which the grantor had not proper notice.

Where such notice did not appear on the record of the action of ejectment, whether notice was actually given became a matter *in pais* to be decided by the jury.

WRIT of error to the common pleas of *Alleghany* county.

The defendant in error, Francis Irwin, was the plaintiff in the court below, and brought this action against the plaintiff in error, Thomas Collingwood, for a breach of covenant of warranty of title to a tract of land, which the latter had sold and conveyed to the former, by his deed bearing date the 29th of February 1820, and containing a covenant of general warranty. The plaintiff below, on the trial, after giving in evidence the deed just mentioned, gave also in evidence the record of an action of ejectment brought against him by William Robinson for the land conveyed by the deed, in the court below, and tried in the circuit court of Alleghany county, wherein a verdict and judgment passed against Irwin the plaintiff below ; under which he was turned out of the possession of the land. The plaintiff also produced William Robinson as a witness, who testified that during the pendency of the action of ejectment he mentioned it to the plaintiff in error. Philip Melvin, another witness for the plaintiff below, testified that before the action of ejectment was ended, the plaintiff in error told him he would give himself no trouble about it ; that he had assigned over several judgments to Irwin at his own

[Collingwood v. Irwin.]

risk. Then Samuel Kingston, a third witness on behalf of Irwin, testified that he was the attorney of Irwin in the action of ejectment. That he knew of no notice to Collingwood with regard to the ejectment. That he spoke to Collingwood of a bond which Collingwood had taken of Carson, of whom he bought the land, conditioned for making good and defending the title to it; and which Collingwood had assigned to Irwin in 1817 when he first sold the land to him. That he (witness) told Collingwood he would hold him responsible on the bond for Irwin. This was after he had mentioned the ejectment to Collingwood. That when he mentioned the ejectment to Collingwood, he denied his responsibility; said nothing about attending to the ejectment; but witness told him if the land was lost, he would hold him responsible on the bond. Witness's conversations with Collingwood were in consequence of his being Irwin's attorney, but he never requested Collingwood to come and defend the ejectment.

Collingwood then, who was the defendant in the court below, gave in evidence a deed of conveyance made prior to the one on which this suit is founded, from himself to Irwin for the land, bearing date the 18th of May 1817, containing likewise a covenant of general warranty. Next a bond in the sum of 1730 dollars given by Carson to Collingwood, with a warrant of attorney to confess a judgment on it, bearing date the 21st of September 1816, conditioned for making good and defending the title of the land to Collingwood, his heirs and assigns; upon which, as appeared from the record thereof, which was also given in evidence, a judgment was entered in the court of common pleas of Alleghany county on the 30th of December 1816. An assignment of this judgment by Collingwood to Irwin, bearing date the 18th of May 1817, was also read in evidence. No *scire facias* was sued out on this judgment to keep alive or continue the lien of it: nearly four years after it had expired, the first *scire facias* was sued out to November term 1825, and a judgment of revival obtained therein on the 22d of June 1826. After this another *scire facias* was sued out to ———— term 1830. Collingwood then offered to prove further, that at the time of executing the second deed of conveyance from him to Irwin, upon which this suit is brought, it was agreed that Irwin should still hold Carson's judgment as security for his title to the land; and that Irwin took it as his only security. Also, that the judgment when entered in 1816 against Carson on the bond, and also when it was afterwards assigned by Collingwood to Irwin, was, and continued to be, a lien upon the real estate of Carson, sufficient in value to indemnify Irwin for the loss of the land, but that Irwin by his neglect to sue a *scire facias* on the judgment for the purpose of continuing the lien, had suffered it to expire; and that Carson, before the judgment was revived again, had sold and conveyed away all his real estate, and had become unable to pay it. And still further, he offered to prove that Irwin had a better title to the land than Robinson, notwithstanding the judgment of recovery upon Robinson's title in the ejectment.

[Collingwood v. Irwin.]

The counsel of Irwin objected to all this evidence, and the court below overruled it; to which the counsel for Collingwood excepted, and have assigned the rejection of it for error.

*Hamilton* and *Burke*, for plaintiff in error.

When the deed with general warranty was executed by Collingwood, the judgment obtained on the bond of indemnity against Carson, was at the same time assigned to Irwin. We offered to show that the judgment was the only security Irwin required, that this security was given, and that he exonerated Collingwood from the covenant of general warranty. The question then is, Had we a right to show that Irwin's cause of action was thus released? We contend for the right. Bender *v.* Fromberger, 4 *Dall.* 439; Miller *v.* Henderson, 10 *Serg. & Rawle* 290. We offered further to prove, that notwithstanding the verdict against Irwin on the trial of ejectment for the land, he still had the better title, and had he chosen properly to assert it, could have retained the land. With regard to the second deed given by Collingwood, it was merely a correction of the former deed, both being drawn with general warranty, and was not intended to create any new responsibility. It was clearly our right to show that by Irwin's negligence in suffering the lien of the judgment, on condition of the assignment of which he agreed never to resort to the covenant of warranty in the deed, to expire, we sustained a loss which should indemnify us against an alleged breach of that covenant.

*Fetterman,* for defendant in error.

The lien of the judgment had expired before the second deed was executed by Collingwood to Irwin. It was not competent for Irwin, by parol evidence, to contradict or explain away the covenant of general warranty, which was a material part of the deed. Christine *v.* Whitehill, 16 *Serg. & Rawle* 107; Robinson *v.* Justice et al., 2 *Penns. Rep.* 19. It is clear, from the testimony, that Collingwood had full knowledge of the pendency of the ejectment, in which Irwin lost the land.

The opinion of the Court was delivered by

Kennedy, J.—The offer of the plaintiff in error was to prove three distinct and several propositions, which will be considered separately.

The first was to prove in effect by oral testimony, that at the time of executing the deed upon which this suit is founded, it was agreed between the parties in this case, that the judgment against Carson, previously assigned by Collingwood to Irwin, should be Irwin's only security for the title and his enjoyment of the land under it; and that Collingwood was not to be liable to Irwin upon his covenant of general warranty contained in the deed, in any event whatever. Now it is impossible to avoid seeing, that to admit such proof would not only be admitting evidence to contradict, but to alter and change

most materially the character and effect of the deed.  Instead of being a deed with covenant of general warranty, as it purports on its face, it would, by the operation of the evidence proposed to be given, become a deed without any engagement whatever on the part of the grantor for the goodness of the title.  It is not pretended that there was any mistake or fraud committed in introducing the covenant of general warranty into the deed : the evidence therefore is not offered with a view to obtain relief from the one, nor for the purpose of correcting the other.  Hence it is unlike the case of Miller *v.* Henderson, 10 *Serg. & Rawle* 290, which has been relied on mainly to show that the evidence ought to have been admitted.  Henderson was induced to execute the bonds as surety under an assurance from the obligee, that it was merely for the sake of form that he was asked to do so, and that he should never be called on to pay them.  After this conduct on the part of the obligee, it was thought to be grossly fraudulent in him to attempt to enforce payment of the bonds against the surety, and the parol evidence was admitted to prevent him from carrying his fraudulent design into execution.  The evidence offered then in the case under consideration being oral, falls directly within the general rule, that it shall not be admitted to *contradict, alter* or *vary* the written agreement between the parties to it.  The court was therefore right in rejecting it.

The second proposition proposed to be proved was, that the judgment against Carson, when the plaintiff assigned it to Irwin as a security for the goodness of the title to the land which he had sold to him, was a lien upon real estate owned by Carson, fully equal in value to the whole amount of the judgment, but that Irwin, through negligence, or from some other cause, had suffered the lien of the judgment to expire for want of reviving it in due season by *scire facias ;* and that the judgment, as a security for the title to the land, or as an indemnity for the loss of it, had in short thereby become worthless.  I think the evidence going to establish these facts ought to have been received ; for Irwin having taken the assignment of the judgment as a collateral security for the title to the land, was bound to use the ordinary means at least for the necessary preservation of it.  He ought therefore to have kept the lien of the judgment alive and in force by suing out a *scire facias* upon it and obtaining a judgment thereon, continuing the lien in the manner prescribed by the act of assembly.  It is clear from what was proposed to be proved, that he altogether omitted to do this ; and if the judgment was good at the time he accepted of the assignment of it, and has become worthless through his omission to continue the lien of it upon the real estate then owned by Carson, Irwin ought to bear the loss thus arising from his own neglect.

It has been contended that it was the duty of the plaintiff in error, notwithstanding his assignment of the judgment to Irwin, to attend to having it revived as often as was necessary for the purpose of continuing its lien upon the real estate of the defendant in it.  I how-

[Collingwood v. Irwin.]

ever think differently; because by the assignment of it he parted with all his right and his authority over it.   He thereby transferred all this to Irwin, and of course had no longer any right to interfere with it.   Irwin had the right as well as full power and authority to dispose of the judgment as he pleased; either to let the lien of it die, or to keep it alive; and must therefore abide the consequences of his own will or negligence.   The conclusion is, that the proof of this second proposition ought to have been admitted, and that the court erred in rejecting it.

The third proposition offered to be proved was, that the title of Irwin to the land under the deed of conveyance made to him by the plaintiff in error, was better than that of Robinson's, under which he was evicted from the land.   This testimony was clearly admissible; for the plaintiff in error was no party on the record to the judgment in ejectment, under which Irwin was turned out of possession of the land.   The judgment in ejectment was therefore only *prima facie* evidence, as against the plaintiff in error, of Robinson's title to the land being better than that of Irwin's: but it is alleged that the plaintiff in error had notice of the commencement and pendency of the action of ejectment, and is therefore concluded by the judgment rendered in it in favour of Robinson's title.   Supposing this to be so, how does it appear that he had such notice?   Certainly not by any exhibition of the record of the action of ejectment and the judgment given in it: because, as already observed, he is not a party on the record of it; neither does it appear by any admission of his placed upon the record of this suit.   Whether he had such notice or not was then a matter *in pais*, and became a question of fact to be decided by the jury and not by the court; but the court, by rejecting the evidence on this ground, must necessarily have decided on the fact, that the plaintiff in error had such notice.   Under this point of view, I apprehend the court erred; for even in case evidence of a regular notice from Irwin to Collingwood of the action of ejectment being brought against him, with a request to appear and defend against it, had been given by Irwin, still as long as such notice and request were not admitted by Collingwood, it was the duty of the court below to have admitted the evidence in regard to the title to the land, and afterwards to have directed the jury, that if from the evidence they believed that Collingwood was notified by Irwin or his attorney of the action of ejectment being brought, and was requested likewise to appear and defend against it, then they were to consider him bound and concluded by the judgment rendered in it: and whether Irwin had a better title to the land than Robinson or not, was a question which they could not decide according to any opinion of their own which they might form by an examination of their respective titles, but were bound to decide it according to the judgment given upon it in the action of ejectment.

But it appears to me that the proof of notice and a request to defend, was not at all such as would have warranted the court in leav-

[Collingwood v. Irwin.]

ing this question to the jury in the manner I have just stated. As to the evidence of notice being given by third persons, who had no concern in the matter, to the plaintiff in error of the action of ejectment being brought against Irwin to take the land from him, it can avail nothing; it was not even admissible. Then what does the evidence of Mr Kingston amount to, who was the attorney of Irwin in the ejectment? He says his conversations with Collingwood were had with him as the attorney of Irwin in the action of ejectment; but he only spoke of the action of ejectment as brought and pending, and told Collingwood that he, as the attorney of Irwin, would hold him responsible on the bond; that although he made an assignment of it, that did not exonerate him; and that he never requested Collingwood to come and defend the action of ejectment. Now no intimation was ever given to Collingwood, during the pending of the action of ejectment, or that Irwin in any event intended to have recourse to him on the covenant of warranty in the deed. Nothing was ever said to him by either Irwin or his attorney, from which he could have inferred, or even conjectured, that such a suit as the present would be brought against him in case Irwin lost the land. He was told merely that he would be held responsible on the *bond* which he had assigned to Irwin. Now, although no lawyer, Collingwood knew well that his assignment of the bond contained no covenant or engagement on his part to indemnify and compensate Irwin for the land in case he lost it, and consequently he need give himself no concern if that were the ground upon which a future indemnity in case of loss were to be sought against him. Such notice, it appears to me, was in some degree calculated to mislead Collingwood, and was therefore not such as ought to have been given under this view of this part of the case. I think that the question of title to the land was fairly open to be decided according to the whole evidence which might have been given on the trial by both parties. The court therefore ought to have received the evidence of the plaintiff in error on this point.

Judgment reversed, and a *venire de novo* awarded.