# McQueen's Appeal.

1. A creditor, to whom a bond or chose in action has been assigned as collateral security, must employ reasonable diligence in its collection and application in payment of his debt. If he converts it into a less security, or through supine negligence suffers it to be lost, he is accountable to his debtor for the loss occasioned thereby.

2. A. assigned to B., his creditor, as collateral security, two promissory notes drawn to the order of A. by C. B. entered suit on said notes against C., recovered judgment thereon and levied on C.'s real estate, which was of greater value than the amount of the judgment. At the sheriff's sale of said property, held without notice to or knowledge of A., there being no other bidders present, B.'s daughter, at his suggestion, bid in the property for about one-twentieth of its real value. B. subsequently sued A. for the balance of his debt remaining unpaid after the application thereto of the proceeds of the sheriff's sale, and recovered judgment therefor. A. then filed a bill in equity against B., praying that he be restrained from collecting said judgment and for an account. *Held*,

(1) That while the sheriff's sale to B.'s daughter was unimpeachable.

[McQueen's Appeal.]

as against her, yet as B. had not exercised, in the interest of his debtor, reasonable diligence in conducting the execution and sheriff's sale for the collection of said collaterals, B. was therefore accountable to A. for the loss occasioned thereby.

(2) That the measure of A.'s loss was the value of the collaterals, not the real value of the land, when sold at sheriff's sale; that the amount of B.'s judgment against C., with interest, should be applied in payment of B.'s judgment against A., and that thereupon said collaterals should become B.'s property.

(3) That B. was not entitled, under the circumstances of this case, to compensation for his expenses and attorney's fees in his suit against C.

3. A party to a suit, who avers, but fails to establish, a certain state of facts, is not estopped in a subsequent suit between the same parties on the same subject matter from alleging a different and inconsistent state of facts. *Aliter*, if he were successful in establishing his first averment.

4. Where, therefore, in the above action by B. against A., A. averred and testified that he had given B. the notes, not as collateral security but in full payment of his debt, and the verdict in favor of B. established the contrary, A. was not estopped from subsequently averring in his bill that the notes were given as collateral security.

November 8th 1883.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ.  GREEN, J., absent.

APPEAL from and certiorari to the Court of Common Pleas No. 2 of *Allegheny county:* In Equity. Of October and November Term 1883, No. 223.

This was an appeal by William McQueen from a decree of the said court, sustaining a bill in equity, wherein Henry C. Oakley was plaintiff, and William McQueen and Eliza M. McQueen were defendants.

The bill averred :

1. That A. D. Dean and David Pentz gave the plaintiff, Henry C. Oakley, two promissory notes for $200 and $125 respectively, drawn to his order.

2. That the plaintiff, on March 24th 1877, assigned these notes to William McQueen, to collect them and apply the proceeds in payment of a debt due to McQueen from the plaintiff.

3. That William McQueen entered suit in his own name against David Pentz et al., and recovered judgment against David Pentz for $344.03.

4. That said McQueen, in execution of said judgment, levied on two certain lots of ground in Allegheny county, belonging to David Pentz, under which execution the said real estate was sold, without the knowledge of the plaintiff, to Eliza M. McQueen, the daughter of William McQueen, for the sum of $51 ; and said Eliza M. McQueen and William McQueen are still in possession of the same.

5. That the sale of said property was made without the knowledge and consent of the plaintiff, for the sum of $51, a mere pittance of its value ; and for the purpose of vesting a title to said lots of ground in him, William McQueen, through his daughter Eliza M. McQueen, who was at that time a minor, and under the control of William McQueen, her father, who is the real owner of said lots of ground, under the said sheriff's sale, and the said sale was fraudulent and prejudicial to the rights and interests of the plaintiff, and was consummated by said McQueen in order to deceive, cheat and defraud the plaintiff, who is entitled to said property.

6. That at No. 483, October Term 1877, said McQueen obtained a verdict against the plaintiff et al., for $342.09, and he is threatening to collect said amount from the plaintiff et al.

The bill prayed that the defendants be compelled to convey to the plaintiff the said lots of ground, and that William McQueen be restrained from proceeding to collect by execution the amount of the judgment to No. 483 October Term 1877.

The defendants averred in their answer, inter alia :

2. That although paragraph second in said bill is true, the said plaintiff, in a certain action in this court, in which said William McQueen, of defendants, was plaintiff, and this plaintiff was defendant, at No. 483, October term, 1877, swore to a different state of facts, and he is therefore estopped from setting the said matter up in this action.

The court appointed H. A. Miller, Esq., Examiner and Master. His findings of fact and law were as follows :

2. That the plaintiff on the 24th of March, 1877, assigned the two notes to the defendant, William McQueen, as collateral security for a debt owed by the plaintiff to said McQueen, the said defendant, to collect the money due on the said notes and apply the same when collected as payment on the debt owed by the plaintiff to him. That the defendant, William McQueen, at No. 483, October Term, 1877, in the Court of Common Pleas of Allegheny county, brought suit against the plaintiff here to recover the indebtedness due him from the plaintiff. That the issue in that suit was as to whether the said defendant William McQueen (the plaintiff in that suit), had taken the said Pentz notes as payment of the debt sued on by him, or as collateral security for the same. That on the trial of that suit the plaintiff here alleged and swore that the defendant here, William McQueen, had taken said Pentz notes as absolute payment, and the said McQueen averred that they were taken by him as collateral security, and that the issue in that suit was

decided in favor of the plaintiff therein, viz. : said William McQueen, one of the defendants here.

3. That the said William McQueen caused an action to be brought in his own name in Beaver county on the said two Pentz notes against D. Pentz et al., and obtained judgment against D. Pentz on the 25th of May, 1877, for $344.03.

4. That said William McQueen levied upon two certain lots of ground, situate in county of Allegheny, Pa., under which writs said real estate was sold, without the knowledge of the plaintiff here, to Eliza McQueen, the daughter of William McQueen, for the sum of $51, and that Eliza M. McQueen is still in possession of the same.

5. That defendant, William McQueen, received notice of this sheriff's sale from Mr. Barton's office. That he asked his daughter and co-defendant here if she would bid on the property. She, at his solicitation, agreed to do so, and sent word through him, William McQueen, to Mr. Barton to bid the property in for her. He did so and the property was bid in for her for the sum of $51, which was a very small proportion of its value, and the bid was paid by William McQueen for her, and with her own money, earned by herself and with which he had nothing to do. That at the time of this sale Eliza M. was a minor living with her father, said William McQueen, and that the title to said property, by virtue of said sheriff's sale is in the said Eliza McQueen, and said William McQueen has no interest in the same. That the said sheriff's sale was, as between the defendant, William McQueen, and the plaintiff fraudulent and prejudicial to the rights of the plaintiff.

6. That the said William McQueen obtained a verdict and entered judgment thereon in the above mentioned suit at No. 483, October Term 1877, and is threatening to collect the amount thereof from the plaintiff.

Naturally, the first question which is presented for consideration, is as to the effect of the plaintiff having, in an action between the same parties, alleged and swore to a different state of facts than those set forth in the second paragraph of the bill, or if the plaintiff is thereby estopped from setting up the facts alleged in the bill there is no necessity for any further consideration of the case. Is the plaintiff estopped? The rule in such cases seems to be this : " That where the ground taken by either party to a suit is prejudicial to the other by cutting him off from a good defence or precluding a recovery in a valid cause of action it will bind the party who adopts it as an equitable estoppel, and will preclude him from shifting his ground in a subsequent suit to the injury of his opponent : Smith's Lead. Case (6 Am. ed.) vol. 212, and " A man who obtains or

defeats a judgment by pleading or representing an act in one aspect will be precluded from giving it a different and inconsistent character in a subsequent suit upon the same subject matter:" Ibid. 818. It applies "where the repugnancy has operated or would if the retraction were allowed to operate unjustly upon the rights of others:" Baily v. Baily, 8 Wright 275-7. It will be observed that it is the successfully alleging an act or fact that constitutes the estoppel. Had the plaintiff succeeded in defeating a recovery in the former case, doubtless he would be estopped. He was not successful and his retraction here does no injustice to the rights of any one, and the Master is of opinion that he is not estopped. If any one is estopped it is the defendant, William McQueen, for he successfully alleged in the former suit that he had held these Pentz notes as collateral. Having been successful and recovered upon this point, he cannot now allege otherwise, and he does not. The rule should not be used to deprive any one of justice. The fact of the plaintiff having sworn to a different state of facts in the former suit might have some effect upon his credibility, but here there is no dispute about these facts for they are admitted in the answer.

That the defendant, William McQueen, under the facts found, was a trustee of the plaintiff cannot admit of doubt. " A creditor who takes a bill or note as collateral security stands in the position of an agent or trustee, and must protect the interest of the debtor as well as his own:" American Lead. Cas. vol. 2, 291, and, " he is bound to employ reasonable diligence in the collection of the collaterals, and if wasted by him or lost by his negligence he is liable to account for the same to his debtor:" Muirhead v. Kirkpatrick, 9 Harris 241; Collingwood v. Irwin, 3 Watts 309; Beale v. The Bank, 5 Watts 530; Hanna v. Holten, 28 Smith 337. And when he converts them to his own use, as he is presumed to do when he refuses to account for them, he is chargeable with their full value : Spalding v. Bank, 9 Barr 28; Bank of U. S. v. Peabody, 8 Harris 457.

In this case the judgment, which the defendant, William McQueen, held as collateral was a lien on the real estate which was of much more value than the amount of the judgment. The plaintiff was entitled to all the benefit that could arise out of it, and to all that could be made out of it, and the defendant, William McQueen, was bound to protect his interests. The lien and all benefit from it were lost, not by the mere neglect of the said defendant, but by his acts. He procured a third party, a member of his own family, to buy in the property at a mere pittance, was active in accomplishing this, when he should have protected the rights of the plaintiff. Procuring another

and a member of his own family to purchase the property for a mere trifle, and attending to the matter for such purchaser, were not acts calculated to protect the interests of the plaintiff. In the opinion of the Master these acts of defendant, William McQueen, amounted to a conversion of the security and· property by him. The facts found do not show that Eliza M. McQueen had any knowledge of the relation her father sustained to the plaintiff, nor was in any manner a party to his acts. From all that has been shown she seems to be an innocent purchaser for value.

The Master is, therefore, of opinion that the bill should be dismissed as to the defendant, Eliza M. McQueen. That the defendant, William McQueen, should account to the plaintiff for the value of the said property, and, if said value is sufficient to pay the expenses of recovering judgment in Beaver county, including attorneys' fees, costs, except expenses and costs of the said sheriff's sale, the expenses, costs and attorney fees, and debt and interest of judgment at No. 483, October Term 1877, then the defendant, William McQueen, should be restrained from collecting judgment, and should also assign to the plaintiff the said judgment against D. Pentz recovered in Beaver county, as aforesaid, and, if any balance remains after deducting all the above amounts from the value of the property the defendant should be decreed to pay this balance to the plaintiff.

In a supplemental report, the Master stated an account. After debiting William McQueen with the estimated value of the Pentz property at the time of the sheriff's sale, $831, and crediting him with his costs, expenses and attorneys' fees in the cases of McQueen *v.* Pentz and McQueen *v.* Oakley, and the amount of the judgment in the latter case, amounting in all to $503.43, he reported that a balance of $327.57 was due to Oakley from McQueen.

Exceptions filed by the defendant to the Master's findings of fact and law were dismissed by the court, the reports confirmed and a final decree entered that William McQueen pay the plaintiff $327.50, with interest thereon from May 24th 1882; that he assign to the plaintiff the judgment held by him against Dean and Pentz; that he be perpetually restrained from collecting by execution the amount of the judgment held by him against the plaintiff, and that he pay the costs of this proceeding.

William McQueen thereupon took this appeal and certiorari, assigning as error the dismissal of his exceptions, and the entry of the said decree.

*John Barton,* for the appellant.

*Fitzsimmons* (*Robb* with him), for the appellee.

Mr. Justice TRUNKEY delivered the opinion of the court, January 7th 1884.

By the answer it is admitted that the appellant received from the plaintiff two notes signed by A. D. Dean and David Pentz, for the purpose of collection and application of the same as payment on a debt owed by the plaintiff to the appellant, and that the appellant in his own name obtained judgment on the notes against Pentz for $344.03; also, that the appellant caused an execution to be issued for collection of said judgment, and levied upon the real estate of Pentz, which was sold by the sheriff to Eliza M. McQueen for $51, and she has been in possession of the premises ever since. The Master finds that the sheriff's sale took place on December 7th 1877, and that the plaintiff had neither notice nor knowledge of it; that the property was worth from eight hundred to one thousand dollars; that the appellant solicited his minor daughter to make the purchase, and that as between the plaintiff and appellant the sale was fraudulent and prejudicial to the rights of the plaintiff. He also finds that the judgment against Pentz was obtained on May 25th 1877, and that the case of McQueen *v.* Oakley et al. No. 483, October term 1877, was tried on the 9th and 10th of January 1879, and judgment recovered for $342.90.

Although the answer admits that the appellant took the notes as collateral security, it charges that the plaintiff in the said case of McQueen *v.* Oakley et al, being one of the defendants, swore to a different state of facts, and is therefore estopped from setting up said matter in this action. What facts the plaintiff then testified, are not stated in the pleadings a material omission, but as the Master has reported them, the answer may be treated as amended. On the trial of that suit the issue was whether McQueen had taken the Pentz notes as payment of the debt sued on by him, or as collateral security for the same. The plaintiff here, a defendant then, testified that McQueen had taken them as absolute payment, and McQueen said he took them as collateral security. The verdict established that they were taken as collateral.

In this action the plaintiff again testified that he believed McQueen took the notes as payment and that he told the truth when he testified before. The verdict is not evidence that he committed perjury; it evidences that McQueen lost nothing by reason of the alleged payment. McQueen was not precluded from recovery in that suit by reason of the allegation of payment; had he been, the plaintiff would be estopped from now setting up that matter as a collateral. It is settled that. " A

[McQueen's Appeal.]

man who obtains or defeats a judgment by pleading or repre-
senting an act in one aspect will be precluded from giving it a
different and inconsistent character in a subsequent suit upon
the same subject." But the appellant adduces no authority for
the position that a man who avers, yet fails to establish, that a
particular thing should apply as payment of a debt, shall lose
the thing itself when the other party avers he received and used
it as a collateral for that debt.    When it is certain which of two
conflicting witnesses the jury believed, it may be uncertain
which told the truth.    Now, the question is not respecting the
plaintiff's credibility, but whether he shall be heard to speak
the truth as admitted by the defendant.    The Master justly
ruled against the alleged estoppel.

Where a debtor assigns a judgment as collateral security to
his creditor, he parts with his authority over it, and the assignee
has the right and power to let the lien die or to keep it alive,
and must abide the consequences of his own will or negligence :
Collingwood *v.* Irwin, 3 Watts 306.    The debtor is entitled to
a credit for a loss upon a judgment assigned as collateral to his
creditor, when the loss is occasioned by the supine negligence
of the assignee : Beale *v.*·the Bank, 5 Watts 529.    A bond, or
chose, which is transferred as collateral security is put under
the dominion of the creditor to make his claim out of it.    His
duties in respect to it are active. · He is to employ reasonable
diligence in collecting the money on the security and applying
it to the principal debt, and a conversion of it into a less security
is such misuse as makes him accountable to the debtor : Muir-
head *v.* Kirkpatrick, 21 Pa. St. 237.    A creditor who holds a
collateral security for his debt stands in a different relation to
the assignor from that of a creditor to the surety for his debtor.
By the contract the assignee is invested with the ownership of
the collateral for all purposes of dominion over it.    When the
collateral is lost by the supine negligence of the assignee he
must account for the loss to his own debtor : Hanna *v.* Holton,
78 Pa. St. 334.    The plaintiff parted with all right of
control over the collaterals, and the appellant was bound to
employ reasonable diligence in their collection.·

From the facts found by the Master it follows that Eliza
M. McQueen was an innocent purchaser and has a good title
for the land.    That her father omitted some things which he
ought to have done, and suffered the land to be sold for about
one-twentieth of its value, was far from reasonable diligence,
and was prejudicial to the plaintiff's right, but he may not be
guilty of actual fraud.    The purchase by the daughter was the
same in effect as if it had been by a stranger.    Her relationship
to the holder of the collateral must be considered in connection

with his omission to give the plaintiff notice of the sale, and the absence of effort on his part to effect a sale at a fair price. We cannot adopt the inference that the appellant fraudulently procured the sale. He had reason to believe that the property was worth nearly three times the amount of the judgment, and when informed that the sale was adjourned for want of bidders, it was not enough to get his infant daughter to buy it for a nominal sum, through the agency of his own attorney. He had absolute control of the writ and if he did not choose to stay it till a better time for selling, he ought, at least, to have notified the assignor before making a sacrifice of the property which left the judgment worthless. His conduct, if not fraudulent, was so culpably negligent that he must account for the loss to the plaintiff.

Under the facts, the measure of the plaintiff's loss is the value of the property he transferred to the appellant. The subject of the assignment was the two notes. Neither the notes nor the subsequent judgment evidenced any title to other property. Had the land sold for all it was worth, after satisfaction of the execution, Pentz would have been entitled to the overplus. It sold for a pittance, and because the assignee omitted reasonable care in prosecuting the collection of the judgment, he is liable for the damages to the assignor. How can the damages exceed the amount of the judgment and costs? Had the assignee released the lien, or receipted and satisfied the judgment, he would not be liable for more. He did not buy the land, and the inquiry does not arise, whether, if he had bought it, he would be answerable to the assignor for its value.

The appellant is not entitled to any compensation for his expenses and counsel fees in obtaining judgment against Pentz; for it is manifest that he made no effort to save the judgment, but was active in behalf of a favorite bidder whom he wished to serve. The amount of the judgment including interest, should be credited upon the debt and costs of the appellant's judgment against the appellee at No. 483, October Term 1877. Upon the application of the collateral as a payment of the principal debt, it would seem that the collateral ought to become the absolute property of the creditor. Hence, the appellant is not bound to re-assign—the appellee obtains its application as if it had been collected.

Although the decree must be modified, the conclusion of the Master and court below is affirmed as to the appellant's liability to account for the loss. We are of opinion that the loss is measured by the amount of the collateral, not the value of the land sold at sheriff's sale.

[Brown *v.* French.]

The facts impel the conclusion that the appellant should pay all costs in this action.

This cause having been heard,.upon consideration thereof, it is adjudged and decreed that the decree be affirmed, but modified so as to stand as follows:

1. That of the judgment of William McQueen *v.* D. Pentz, at No. 167, June Term 1877, the sum of $342.90, as of date January 10th 1879, be applied in payment and satisfaction of the debt of the judgment of said McQueen *v.* Henry C. and John Q. A. Oakley at No. 483, October Term 1877, and that the balance of said judgment *v.* Pentz, $34.67, be applied upon the costs in said judgment at No. 483, October Term 1877, and upon payment of the remaining costs in said judgment, said McQueen shall acknowledge satisfaction of the judgment upon the record. Said McQueen is enjoined from collecting the debt or any part of the costs in said judgment *v.* Oakley, except the costs remaining after deducting said $34.67.

2. That the appellant pay the costs, including the Master's fee of $150, and the costs of this appeal.

3. That the record be remitted for enforcement of this decree.

Judgment *v.* Pentz.

| | |
|---|---|
| Debt, . . . . . . . . | $344.03 |
| Int. to Jan. 10, 1879, . . | 33.54 |
| | 377.57 |
| Judgment *v.* Oakley, . . | 342.90 |
| Applied on costs, . . . | $34.67 |