NORTHWESTERN NAT. BANK OF ABERDEEN v. J. THOMPSON & SONS MANUF'G CO.

(Circuit Court of Appeals, Eighth Circuit. December 16, 1895.)

No. 686.

1. PLEDGEE OF NOTES—DUTIES AND LIABILITIES.
   A person having notes in his possession as collateral security for a debt is bound, so far as the general owner of the notes is concerned, to use reasonable diligence to protect the security so held, and see that it is not outlawed.

2. SAME—NEGLIGENCE.
   A bank having in its custody, as collateral security for a debt, notes secured by a chattel mortgage on live stock and farming implements on a farm, is not necessarily negligent, as respects the owners of the notes, because it fails to collect the notes as they mature, though the mortgaged property is at that time adequate for the purpose, since, under certain conditions, such as a failure of crops, a prudent creditor would allow the mortgagor some indulgence.

In Error to the Circuit Court of the United States for the District of South Dakota.

This action arose upon the following state of facts: On September 25, 1889, B. L. Adamson executed a chattel mortgage in favor of O. B. Willard to secure the payment of three notes,—one for $1,500, due December 1, 1890; one for $1,500, due December 1, 1891; and one for $2,000, due December 1, 1892. The mortgage covered certain live stock, such as horses, cattle, and

hogs, then on Adamson's farm in Dickey county, N. D., and certain farming utensils and implements then in use on said farm. Subsequently, on November 5, 1889, O. B. Willard, the mortgagee, pledged the Adamson notes aforesaid to the Northwestern National Bank, of Aberdeen, S. D., the plaintiff in error, to secure the payment of a debt which he then owed to said bank. At a later date, to wit, on May 4, 1890, O. B. Willard assigned to the J. Thompson & Sons Manufacturing Company, the defendant in error, the aforesaid Adamson's notes, which were then in the possession of the Northwestern National Bank of Aberdeen, which assignment was made by Willard subject to the prior lien of the bank, and to secure the payment of $2,271.82, then due from Willard to the J. Thompson & Sons Manufacturing Company. The chattel mortgage executed by Adamson as aforesaid was filed for record in Dickey county, N. D., on October 2, 1889, and under the laws of North Dakota remained a lien upon the mortgaged property for the period of three years. The laws of North Dakota provide, in substance, that a chattel mortgage shall cease to be a lien after the expiration of 3 years from the date of recording the same, unless within not less than 10 nor more than 30 days before the expiration of that period the mortgage be renewed by filing in the office of the register of deeds of the proper county a copy of such mortgage, together with a statement of the amount or balance due thereon, subscribed and sworn to by the then owner of the mortgage, his agent or attorney. Laws N. D. 1890, c. 41, pp. 147, 148. The notes executed by Adamson, and secured by the aforesaid chattel mortgage, were not paid, nor was the mortgage renewed at the expiration of three years from the date of recording the same in the mode prescribed by the aforesaid statute. After the expiration of that period, to wit, on October 15, 1892, Adamson executed a second mortgage on the property to secure a debt due to W. B. Allen in the sum of $4,000. By reason of the execution of the second mortgage in favor of Allen, after the expiration of the lien of the first mortgage, the security held by the Northwestern National Bank for its own benefit and for the benefit of the J. Thompson & Sons Manufacturing Company became utterly valueless. This action was brought by the J. Thompson & Sons Manufacturing Company, hereafter termed the "Manufacturing Company," against the Northwestern National Bank, hereafter termed the "Bank," to recover damages for the loss of the security in the manner aforesaid. The complaint charged, in substance, that the security held by the bank—that is to say, the Adamson notes and chattel mortgage—was lost, and became valueless in consequence of the negligence of the bank in failing to renew the mortgage in the mode provided by law prior to the expiration of the lien thereof. The complaint also charged the bank with negligence in failing to enforce the payment of the mortgage debt as the several installments thereof became due. The plaintiff below recovered a judgment against the bank for $1,965.41, to reverse which the bank has sued out a writ of error.

H. H. Potter, for plaintiff in error.

Joe Kirby filed brief for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

We cannot assent to the view that an error was committed either in refusing to exclude all the evidence that was offered by the plaintiff below or in declining to direct a verdict in favor of the defendant. In our judgment, the case was necessarily left to the jury to decide, and the question to be considered is whether it was submitted to the jury under proper instructions.

With reference to the duty devolved upon the defendant bank by reason of its having the notes of Adamson in its possession, the circuit court charged the jury, in substance, as follows:  That by vir-

tue of having such notes in its custody as collateral security "it agreed to exercise diligence in the protection of the security"; that a person having notes in his possession as collateral security for a debt is bound, so far as the general owner of the notes is concerned, "to use reasonable diligence to protect the security (so held), and see that it does not outlaw." It further charged the jury, in substance, that when the manufacturing company received an assignment of the Adamson notes from Willard, subject to the prior lien of the bank, it had the same rights as against the bank that its assignor, Willard, had; that is to say, that the bank was bound to respond to the manufacturing company for any damage which the latter sustained in consequence of a loss of the securities by the bank's negligence. It also charged the jury, in substance, that in assessing the damages, in case the verdict was against the bank, they should deduct from the value of the securities which were held by the bank and lost by its negligence the amount of the bank's claim against Willard, for which the notes were pledged as collateral security, and that the manufacturing company could only recover the value of the collateral over and above the amount of such claim. These several instructions were excepted to by the defendant bank, and have been made the subject of several assignments of error, but we are of the opinion that, as applied to the facts of the present case, the aforesaid instructions were substantially correct, and are not subject to just criticism.

Another exception was duly taken by the defendant to the following portion of the charge, to wit:

"Now, this mortgage, gentlemen, that this bank took, as a legal proposition, the bank was required to exercise caution in reference to it. This mortgage was to secure a note—one note—payable on the 1st day of December, 1890, for $1,500.00. It was the duty of the bank to see that that part of it was collected when it was due, or else to show why it was not collected. If on the 1st day of December, 1890, there was property at that time by which the note could have been paid, it was the duty of the bank to have collected it. There was another note due December 1, 1891, for $1,500. Now, it was necessary for the bank at that time not to have deferred it until this other note expired. Considerable has been said, both in the testimony and in the argument, what this property was worth on the 2d day of October or December, 1892. That is not the sole question for you to examine, gentlemen. If the bank allowed these notes to run, they cannot come in and say that they should not respond because the property has depreciated in the three years, for they agreed, when they took those, to see that those were collected when due, or to use reasonable diligence to do the same."

We are not satisfied that the foregoing instruction was correct as applied to the state of facts developed by the testimony. On the contrary, we think it most probable that the law as therein declared misled the jury, and was prejudicial to the defendant. The trial court appears to have instructed the jury, in substance, that when the first note held by the defendant bank matured on December 1, 1890, it was the duty of the bank to have enforced the payment of the same if the mortgaged property was then adequate for that purpose; that it was also in duty bound to have taken similar action on December 1, 1891, when the second note matured; and that, if the bank failed to take such action on either of these occasions, it was guilty

of such negligence as rendered it accountable to the plaintiff. But, considering the character of the mortgaged property, the fact that it consisted of live stock and farming implements, by means of which the mortgagor was enabled to work his farm, it cannot be admitted, we think, that it was the duty of the bank, under all circumstances, to proceed to foreclose the mortgage whenever a single installment of the debt became due, and was not promptly paid. The mortgagor probably expected to discharge the mortgage debt by the sale of the products of his farm, which he should succeed in raising by the use of the mortgaged property. He may have had no other means of paying the debt. In case of a failure of crops, therefore, and under many other conditions that may be supposed, a prudent creditor would very likely have deemed it the part of wisdom to defer foreclosing the mortgage, and to treat the mortgagor with some indulgence. If the bank had taken possession of the mortgaged property on December 1, 1890, and had proceeded to foreclose the mortgage at that time, such action on its part might have resulted in a total loss of the interest which the manufacturing company then had in the Adamson notes, and in the property which was pledged to secure the payment of the same. But, be this as it may, we think that the trial court erred in declaring as a matter of law that it was the duty of the bank to have proceeded to collect the first and second installments of the mortgagor's debt as soon as they became due, without reference to the mortgagee's financial condition at that time, and without reference to the consequences of such action. Instead of giving an instruction to that effect, we are of the opinion that the jury should have been left at liberty to determine as a matter of fact, and in view of all the circumstances of the case which were developed by the testimony, whether the bank was guilty of culpable negligence in failing to foreclose the mortgage at an earlier date. It is most probable, we think, that the verdict which was rendered against the defendant bank was due to the action of the trial court in giving the aforesaid instruction. For the error committed in giving the same, the judgment is accordingly reversed, and the case is remanded for a new trial.