WARBURTON v. TRUST CO. OF AMERICA.

(Circuit Court, E. D. Pennsylvania. May 5, 1909.)

No. 16.

1. PLEDGES (§ 30*)—COLLATERAL—CONSERVATION—DUTY OF PLEDGEE.

Where a trust company received certain corporate bonds as collateral security for complainant's liability on an underwriting agreement, and the corporation became a bankrupt, it was the trust company's duty to employ reasonable diligence to conserve the collateral and collect thereon all moneys which it was reasonably possible for it to secure through a prompt presentation of the bonds in the bankruptcy proceedings.

[Ed. Note.—For other cases, see Pledges, Dec. Dig. § 30.*]

2. PLEDGES (§ 1*)—CHOSES IN ACTION—TRANSFER AS COLLATERAL—RIGHTS OF PLEDGEE.

A bond, or any chose in action, which is transferred as collateral security, is not in the nature of or subject to the incidents of a pawn or pledge, but is under the dominion of the creditor, to make his claim out of it.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 1, 4, 5; Dec. Dig. § 1.*]

3. JUDGMENT (§ 735*)—RES JUDICATA—QUESTIONS DETERMINED.

Complainant subscribed to an underwriting agreement for the bonds of a corporation in the sum of $15,000. The bonds were delivered to defendant trust company, and, the corporation having become a bankrupt, the trust company surrendered the bonds and released the lien of the mortgage on receiving 8 per cent. of their face value. In an action by the trust company on the underwriting agreement, complainant denied liability thereon, and the case was tried on that theory, though it was also alleged that the bonds which the trust company had held as collateral to defendant's subscription had been converted, and the amount realized thereon stated. Held, that a judgment establishing complainant's liability on the agreement was not res judicata of the question whether the trust company had exercised reasonable diligence in conserving the collateral and collecting all that was possible therefrom.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 735.*]

4. JUDGMENT (§ 735*)—RES JUDICATA.

Where defendant trust company received the bonds of a corporation as collateral to an underwriting agreement, and later surrendered the bonds in bankruptcy proceedings against the corporation for 8 per cent. of their face value, complainant, in a suit to restrain the collection of a judgment recovered by the trust company against him on his underwriting subscription, was entitled to a determination of the question whether the trust company had used reasonable diligence in conserving and collecting the collateral.

[Ed. Note.—For other cases, see Judgment, Dec. Dig. § 735.*]

In Equity.

Frank A. Harrigan, for complainant.

Duane, Morris & Heckscher, for respondent.

HOLLAND, District Judge. Complainant has filed this bill to restrain the Trust Company of America from proceeding to collect a judgment which the trust company secured against him in this court on November 12, 1906, for the sum of $17,783.94. It appears from the bill filed that the trust company brought suit against Mr. Warburton on what is described as an "underwriter's agreement," which is set forth in full in the bill. It further appears that the trust company, upon the solicitation of the board of directors of the Fournier-Searchmont Automobile Company, a corporation engaged in manufacturing automobiles in this state, agreed to loan the automobile company $350,000, for which sum the latter executed a mortgage on its real estate here. The complainant became an underwriter for $15,000 of the bonds secured by this mortgage, and signed the agreement, which contained the following provision:

"The underwriters will deposit, or cause to be deposited, with the trust company, as collateral security for the repayment of said loan, or advances, and such interest and commission, and for the reimbursement of the trust company for any and all expenses which said trust company may incur by reason of any breach of this agreement on the part of the underwriters, * * * the bonds and shares of the capital stock of the said Fournier–Searchmont Automobile Company in amount as follows."

As the entire bond issue of $350,000 was guaranteed by subscribers to these bonds in the underwriter's agreement, the entire issue of these bonds, with $350,000 of preferred and $350,000 of common stock, was delivered as collateral for the loan.

To the statement filed by the trust company in its suit at law against Mr. Warburton, charging him with the sum of $15,000, the amount of the bonds for which he subscribed, together with interest, the latter filed an affidavit of defense denying his liability, and upon the issue framed a verdict by a jury was rendered against him on November 12, 1906, for $17,783.94, and subsequently the Circuit Court of Appeals for this circuit, on the 6th day of February, 1908, affirmed the judgment entered upon that verdict, whereupon Mr. Warburton made a tender to the trust company of the sum of $19,309.06, being the amount of the judgment, with interest and costs to the date of the tender, and demanded of the trust company that it return to him the

collateral deposited by him under the contract. The trust company offered to return to Mr. Warburton the preferred and common stock of the automobile company which had been deposited with it as collateral security, but informed the complainant that it was unable to return the $15,000 of bonds placed with it as collateral, and further claimed that it was not required to do so, for the reasons set forth by the trust company in its answer to this bill, from which it appears that these bonds were taken as collateral security for the $15,000 subscription of Mr. Warburton, who had been notified on December 2, 1903, by the Trust Company, to take and pay for them in accordance with his agreement, and he had refused to do so. Subsequently the automobile company became insolvent, and was adjudged a bankrupt in the United States District Court for the Eastern District of Pennsylvania on December 29, 1903. The bankruptcy proceedings were continued before a referee. It is claimed that it was ascertained that the bonds of the automobile company were rapidly deteriorating in value, and the trust company surrendered them and released the lien of the mortgage upon receiving 8 per cent. of their face value. After deducting the costs of collection, the balance, amounting to $901.97, was credited to Mr. Warburton's account on the books of the trust company, and allowed him in the statement of claim filed in the suit at law upon which the judgment was obtained. The trust company, in its statement of claim filed in the suit at law, set forth the fact that these bonds had been surrendered and the sum of $901.97 collected for Mr. Warburton's account, and it was alleged in the statement that it was done with his assent. This, however, in his affidavit of defense, Mr. Warburton denied, and claimed that he was not liable on the contract, and that the trust company presented these bonds in the bankruptcy proceeding for their own protection. Mr. Warburton was present at some of the meetings of the creditors in the bankruptcy proceedings of the automobile company, and was aware of the action of the trust company in entering into the agreement to accept 8 per cent. on the bonds which it held as collateral security, and made no objection, but at that time he denied any liability on his part on the underwriter's agreement. His defense was a denial of liability and nothing more. At the trial of the cause he presented evidence only in support of his contention of no liability, and none as to the value of the bonds. The trust company, as it appears, is unable to deliver to Mr. Warburton these bonds, and the bill prays that it be perpetually enjoined from issuing execution upon this judgment against the complainant, or from otherwise attempting to collect the same; and the trust company insists that such an order should not be made against it, and that the bill should be dismissed, alleging that the complainant is estopped from setting up this claim, as Mr. Warburton knew of the surrender of the bonds in the bankruptcy proceeding and acquiesced in the credit allowed by the trust company in its suit at law in which the judgment was obtained against him.

The first question to be considered is the question of the rights and duties of a holder of collateral security. The verdict in the suit at law upon which the judgment was obtained establishes that the trust company was a creditor of Mr. Warburton in the sum of $15,000 on

the underwriter's contract, and that the latter had placed in its possession $15,000 of these bonds as collateral security for that amount. It became the duty of the trust company to employ reasonable diligence in preserving the collateral, and to collect upon it all moneys which, under the circumstances of the particular case, it was reasonably possible for it to secure. It was the duty of the trust company to promptly present these bonds in the bankruptcy proceedings and to use reasonable vigilance and care in securing a full share of the assets in that estate. Had it failed to do so when a distribution was being made in the bankruptcy proceedings of the automobile company, it undoubtedly would have been liable for any amount which could have subsequently been shown to have been collectible on these bonds. A bond, or any chose in action, which is transferred as collateral security, is put under the dominion of the creditor, to make his claim out of it. It is not in the nature of, or subject to the incidents of, a pawn or a pledge. Muirhead v. Kirkpatrick, 21 Pa. 241. The trust company was required to employ reasonable diligence in the collection of any moneys which could be made on these securities, and especially so when the securities were obligations against an insolvent corporation passing through bankruptcy. If the trust company had not presented these bonds in the bankruptcy estate to share in the distribution of the assets, it would have been liable for the loss. Lyon v. Huntingdon Bank, 12 Serg. & R. (Pa.) 61; Lishy v. O'Brien, 4 Watts (Pa.) 141; Beale v. Bank, 5 Watts (Pa.) 529; Mullen v. Morris, 2 Pa. 85; Chambersburg Insurance Company v. Smith, 11 Pa. 120; Muirhead v. Kirkpatrick, 21 Pa. 237; Sellers v. Nichols, 22 Pa. 423; Kemmerer v. Wilson, 31 Pa. 110; Girard Fire & Marine Insurance Company v. Marr, 46 Pa. 504; Hanna v. Holton, 78 Pa. 334, 21 Am. Rep. 20; Stuart v. Bigler, 98 Pa. 80; McQueen's Appeal, 104 Pa. 595, 49 Am. Rep. 592; Reynolds v. Cridge, 131 Pa. 189, 18 Atl. 1010; Easton v. German-American Bank (C. C.) 24 Fed. 523; Chemical National Bank v. Armstrong (C. C.) 50 Fed. 798; Northwestern National Bank v. Thompson Mfg. Co., 71 Fed. 113, 17 C. C. A. 638; Brown v. First National Bank, 132 Fed. 450, 66 C. C. A. 293.

From these authorities it will appear that it was the duty of the trust company to carefully conserve the collateral, and to avoid any depreciation or loss thereon so far as it was able to do so by presenting the same for collection. If the trust company was reasonably diligent, and collected as much as it was possible to do under the circumstances of the case, it is entitled to payment of its judgment; but, in every case where the holder of collateral has failed to realize the face value of the same, it is a question to be determined whether or not due diligence has been observed by the creditor in possession of the collateral in securing all moneys which, under the circumstances, could have been collected on it. It is contended that this question was adjudicated at the trial of the suit at law in this court, and that the complainant in the bill is now estopped from raising that question at this time. The pleadings in the suit at law show that the plaintiff in that case set forth the fact that the security had been converted, and stated the amount which had been realized on the $15,000 of bonds: but Mr. Warburton, prior to the institution of the suit at law, had

169 F.—62

denied liability on the underwriter's agreement, which denial he asserted in the pleadings, and the case was tried upon that theory. The verdict established Mr. Warburton's liability on the contract, and he now sets up that the trust company destroyed the value of the collateral given to secure the payment of his obligation to it.

The question as to whether or not the trust company observed due diligence in conserving the value of the collateral and collecting upon it in payment of Mr. Warburton's indebtedness was not, in my judgment, adjudicated, and he is not estopped from inquiring into that question at this time. The inquiry can be had in this equitable proceeding. McQueen's Appeal, 104 Pa. 595, 49 Am. Rep. 592; Brown v. First National Bank, 132 Fed. 450, 66 C. C. A. 293.

It is ordered, therefore, that Frederick L. Clark, Esq., be and is hereby appointed a special master to report to this court on this question within 30 days from this date. In the meantime an injunction will issue restraining the trust company from issuing execution on the judgment.