## NATIONAL EXCHANGE BANK, Appellant, v. . KILPATRIC.

### Division Two, May 14, 1907.

1. **PLEDGE: Request to Sell Collateral: Pledgee's Loss.** Where defendant gave her accommodation note to a bank and secured its payment by pledging certain other bank stock as collateral security, and thereafter, when the collateral stock was worth par, directed the bank to sell it and credit the proceeds on the note, and the bank failed to do so, and afterwards the stock became worthless, the bank, and not defendant, should bear the loss, and the defendant when sued on the note by the bank will be discharged to the extent he was injured by the bank's failure to sell the collateral.

2. ———: ———: ———: **Payment.** Where the pledgor directs the pledgee to sell the collateral and apply the proceeds on the debt, or permit him to sell it, and the pledgee refuses or neglects to do either, the pledgee cannot escape the loss resulting from a failure to sell, by the fact that the pledgor did not pay the debt. Such a direction or request was not a demand or request that the pledgee surrender the collateral to the pledgor, and hence he was not required to make payment before it became the pledgee's duty to make the collateral available for the payment of the debt.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Sebree & Farrington* and *George Pepperdine* for appellant.

One who pledges certificates of stock, notes or other obligations as collateral security has no right to their possession or to sell or dispose of them until he has paid, or offered to pay, the debt for which they stand pledged. Schaaf, Adm., v. Fries, 90 Mo. App. 3; Doak v. Banks, 6 Ired. (N. C.) 309; Durant v. Einstein, 35 How. P. 223; McClintock v. Bank, 120 Mo. 127; Tally v. Friedman's Savings Co., 93 U. S. 321. Defendant cannot complain that the stock of the Thayer Hardware Company did not bring more without some allegation that plaintiff was negligent in selling the same, or was guilty of some fraud in connection therewith. McClintock v. Bank, 120 Mo. 127. The negligence of the holder of the collateral security, where it depreciates in value or is lost, must be alleged and proved, as the pledgee is only liable for reasonable care as to the same. Bank v. Blackwelder, 81 Mo. App. 428.

*A. H. Livingston* for respondent.

(1) It is not disputed that the $5,100 of the Oregon County Bank stock could have been sold at par; that defendant's agent asked to sell it at such price and apply it on the note, and that plaintiff refused to permit this to be done; and by reason of such refusal the whole amount thereof was lost. Respondent's contention is, that plaintiff bank is responsible for this amount. State Bank of St. Louis v. Bartle, 114 Mo. 276; Brandt on Suretyship and Guaranty (2 Ed.), sec. 440. (2) The judgment is manifestly for the right party. Even if it could be contended that the judgment for defendant was based upon a wrong theory yet if the judgment is sustained upon any ground it will not be reversed. The evidence shows clearly without one word of contradiction, or even an attempt to do so, that

the notes from beginning to end were executed by the defendant and her mother solely as an accommodation of the Central National Bank and the plaintiff bank. It is not even contended that they ever received one cent of consideration, or that they ever paid one cent on the note in interest or otherwise; that the interest on the notes was all the time paid by dividends on the bank stock, and the whole affair was beyond question or doubt simply to accommodate the banks until they could wind up their business at Thayer through the Oregon County Bank. On this state of facts and defense made, defendant was entitled to judgment even if she had failed in the one sustained by the court. Turner v. Overall, 165 Mo. 197.

FOX, P. J.—This cause is now before this court upon appeal by the plaintiff from a judgment in the Texas Circuit Court in favor of the defendant, Lurah T. Kilpatric. The suit was predicated upon a promissory note executed by Lurah T. Kilpatric and Nancy E. Sitton for the sum of $5,200. The petition is in the ordinary form declaring upon a promissory note and there is no necessity for reproducing it here. To this petition the defendants interposed the following answer:

"Defendants, for amended answer to plaintiff's petition, admit the execution and delivery of the note sued upon in this action.

"For further answer, defendants say that the note sued upon was given and executed by them, at the instance and request of plaintiff and for its accommodation, and that no consideration whatever passed to defendants for the same; wherefore, defendants pray judgment with costs.

"Defendants, for further answer to plaintiff's petition, say that in the year 1897, T. J. Boyd & Co. executed a note to the Central National Bank of Spring-

field, Mo., for eleven thousand dollars, and to secure the payment thereof delivered to said bank as collateral security five thousand dollars Alton Bank stock, sixty-six hundred dollars Oregon County Bank stock, four hundred dollars Thayer Canning Company stock, and four thousand dollars Thayer Hardware Company stock; that soon thereafter said T. J. Boyd & Co. failed; that the said Central National Bank disposed of the Alton Bank stock for thirty-five hundred dollars and gave credit therefor on said Boyd & Co. note, leaving a balance due of seventy-five hundred dollars; that after the failure of said Boyd & Co., as aforesaid, the said Central National Bank requested defendants to execute their note for said sum of seventy-five hundred dollars in lieu of and in place of the said Boyd & Co. note, and allow the sixty-five hundred dollars Oregon County Bank stock to be issued to them and still to allow said stock to remain as collateral security, together with the four thousand dollars Thayer Hardware Company stock and the four hundred dollars Thayer Canning Company stock, for the payment of said note of seventy-five hundred dollars; that under these terms and conditions defendants executed said note at the instance and request and for the accommodation of said Central National Bank; that the stock in the Oregon County Bank, while being in defendants' names, was actually held and controlled by the said Central National Bank, and that all dividends thereon and assets therefrom were received by said Central National Bank; that said contract and agreement was made between said bank and defendants in order that it might be enabled to get the said Boyd & Co. note out of the past due files, so that the amount thereof might be used as a live asset in said bank; that after the execution of said note as aforesaid, by defendants, said Central National Bank sold fifteen hundred dollars of said Oregon County Bank stock, and

gave credit therefor on said note of seventy-five hundred dollars, executed to it by defendants as aforesaid; that defendants executed to said bank a renewal note for fifty-one hundred dollars and secured the same by depositing the collateral securities as aforesaid with said Central National Bank. And defendants further say that they are informed and believe that some time in the year 1898 the said Central National Bank was merged into the National Exchange Bank, the plaintiff herein; that by reason of said merger as aforesaid this plaintiff came into possession of the fifty-one hundred dollar note executed by defendants to said Central National Bank, together with all of the above-mentioned stock deposited as collateral security for the payment of said note, in all amounting to ninety-five hundred dollars; that after said plaintiff had come into the possession of said note and collateral security, and about eight months after the maturity of said note, these defendants, at the request of plaintiff and for its accommodation, executed to plaintiff the fifty-two hundred-dollar note now in suit, and deposited as collateral security for the payment thereof the four thousand dollars Thayer Hardware Company stock, four hundred dollar Thayer Canning Company stock, and the fifty-one hundred dollars Oregon County Bank stock, hereinbefore mentioned; that no consideration whatever passed to defendants for the execution of said note and for the deposit of said stock as security therefor; that after said note was executed to plaintiff by defendant as aforesaid, plaintiff sold the four thousand dollars Thayer Hardware Company stock, at par value, and that no part of the proceeds of the sale of said stock was ever credited upon said note, but that plaintiff wrongfully and without authority converted the proceeds of the sale of said stock to its own use. Wherefore, defendants pray that plaintiff be required to make an accounting to them for the amount realized from the

sale of the said Thayer Hardware Company stock, and the disposition of the other collaterals aforesaid, and that upon such accounting defendants have judgment against plaintiff for the amount of the proceeds found to have been received by it for the sale of said stock and other collaterals aforesaid and not credited upon said note, and for all proper relief.

"Defendants further say that while plaintiff held the Oregon County Bank stock as aforesaid as collateral security for the payment of said note, they had several offers to sell said stock at par value of fifty-one hundred dollars, and thereupon requested said plaintiff to sell said stock or permit defendants to sell said stock and apply the proceeds of the sale thereof toward the payment of said note, which plaintiff refused to do; that said stock has now become worthless, and by reason of plaintiff's refusal to sell or permit the same to be sold these defendants have been damaged in the sum of fifty-one hundred dollars, for which they ask judgment against plaintiff, with costs of this suit.

"Defendants further state that in the year 1898 the said Oregon County Bank passed into the hands of a receiver, and that at said time it owed this plaintiff twenty-eight thousand dollars and owed depositors and other creditors about thirty-five thousand dollars; that said Oregon County Bank was possessed of property and assets amounting to one hundred thousand dollars; that before the appointment of the receiver of the said Oregon County Bank as aforesaid, said Oregon County Bank had turned over to this plaintiff as collateral security for the payment of its debt to said plaintiff about fifty thousand dollars' worth of its assets to secure the payment of its said debt, which said assets plaintiff has never accounted for to the stockholders of said Oregon County Bank or the receiver thereof; that after the appointment of the receiver of said Oregon County Bank as aforesaid, said receiver,

by an order of the circuit court of Oregon County, Missouri, made therein approving the same, made an agreement with said plaintiff, whereby plaintiff took possession of all the assets of the said Oregon County Bank and was to pay out of the collections of said assets its debt of twenty-eight thousand dollars, and other debts and liabilities to go to the depositors and other creditors of said Oregon County Bank, amounting to thirty-five thousand dollars, making a total liability of said Oregon County Bank, which plaintiff was to pay, of sixty-three thousand dollars, and, after the payment of the said debts aforesaid, plaintiff was to turn over to the stockholders of said Oregon County Bank the balance of said assets, and that said assets of said bank have never been turned over to the stockholders by plaintiff. Defendants further say that said Oregon County Bank was capitalized at ten thousand dollars, of which fifty-one hundred was in the names of these defendants, and deposited as collateral security for the payment of the note in suit. And defendants say that they are entitled to a fifty-one hundredth part of the sums of money in the hands of plaintiff after the payment of its debt aforesaid and the payment of the depositors and other creditors of said Oregon County Bank, and that the amount to which they are entitled is about eighteen thousand dollars. Wherefore, defendants pray that plaintiff be required to make an accounting as to all the assets received by it of the Oregon County Bank and the disposition thereof; that upon such accounting, after the credit of the amount of the debt due to plaintiff from the said Oregon County Bank and the payment of all the depositors and other creditors of said bank, defendants have judgment against plaintiff for a fifty-one hundredth part of all money received by it in excess of the aforesaid debts and belonging to the stockholders of said Oregon County Bank, and for all proper relief.''

The reply of the plaintiff was in effect a general denial of the allegations of the new matter set up in the answer.

This cause was originally brought in Howell county, Missouri, but the venue of said cause was changed by order of court to Texas county where the cause was finally disposed of. The testimony introduced upon the trial of this cause substantially tended to prove about the following state of facts:

In 1897, T. J. Boyd & Company was a mercantile company at Thayer in Oregon county. The Bank of Alton was a bank located in Alton in Oregon county and the Oregon County Bank was a bank of ten thousand dollars capital stock located at Thayer, Oregon county, Missouri. The Central National Bank was a bank located at Springfield, Missouri, and was afterwards merged with or absorbed by the National Exchange Bank, the appellant here. In 1897 the firm of T. J. Boyd & Company failed and made an assignment. At the time of the failure of this firm the Central National Bank held its note for eleven thousand dollars and collateral for its security as follows: Five thousand dollar stock in the Bank of Alton, six thousand six hundred dollar stock in Oregon County Bank, four thousand dollar stock in Thayer Hardware Company and four hundred dollar stock in a canning company at Thayer, Mo. All these securities were assigned by Boyd & Company to the Central National Bank as collateral for the eleven thousand dollar note. After the failure of Boyd & Company, the cashier of the Central National Bank, doubtless with a view of holding the Oregon County Bank intact (however, this does not clearly appear from the disclosures of the record), arranged with the defendants, Lurah T. Kilpatric and her mother, Nancy E. Sitton, to execute their note in lieu of the note of Boyd & Company and have the stocks of the different corporations re-issued to them, but all to be

held by the Central National Bank. This was done without any consultation with Boyd & Company. So far as the disclosures of the record are concerned it seems that neither the defendant, Lurah T. Kilpatric, nor her mother, Mrs. Sitton, had but very little to do with the transaction, except to sign their names to the note and transfer stock so that the Boyd note might be kept up as a live asset of the bank. By this arrangement the Central National Bank controlled a large part of the stock in the Oregon County Bank. The Central National Bank sold the Alton Bank stock for five thousand dollars and gave credit on the Boyd note and when the defendants executed the first note in lieu of the Boyd note the amount was for seven thousand five hundred dollars. It was understood between the Central National Bank and Captain Sitton, husband of Mrs. Sitton and father of Mrs. Kilpatric, that he sell one thousand five hundred dollars stock in the Oregon County Bank, which would leave the Central Bank still holding five thousand one hundred dollars, which was a controlling interest therein. The one thousand five hundred dollars in stock of the Oregon County Bank was sold and the seven thousand five hundred dollar note credited with the amount thereof. Then the defendants executed their note for six thousand dollars, and on this note appears a credit of eight hundred dollars, which seems to have been placed there out of a balance realized from the Thayer Hardware stock after discharging another Boyd note they held, but in no way connected with this transaction. Whether this credit was placed on the note by the Central or Exchange Bank does not appear. About this time or soon after the Central National Bank was absorbed or its business taken over by the appellant, Mr. Sanford, cashier of appellant bank, went to Thayer and obtained a renewal of the note for five thousand two hundred dollars, being the note sued on,

and delivered up the last note given to the Central National Bank. Plaintiff had also the five thousand one hundred dollars of the Oregon County Bank stock, four thousand dollars of the Thayer Hardware stock and four hundred dollars Canning stock still assigned to it as collateral for the note sued on. Captain Sitton, the husband of Mrs. Sitton and father of Mrs. Kilpatric, testified in this cause and he states that he was acting as the agent of the defendants and requested the plaintiff to sell the Oregon County Bank stock, or to the same effect, to give him permission to sell it and apply it to the payment of the note in suit, and that the Exchange Bank, the plaintiff in this cause, refused to take any steps towards the sale of the stock or to permit the agent of the defendants to do so. Sometime afterwards this bank stock, which was held by plaintiff as collateral, became worthless. At the time the sale of the stock was suggested to the plaintiff and a request made to permit its sale and apply it to the payment of the note, the testimony is undisputed that the stock was worth one hundred cents on the dollar, and would have brought its par value. The Thayer Hardware stock was sold and it is admitted by plaintiff that the sum of two thousand dollars was realized from such sale.

At the close of the evidence the court gave numerous declarations of law; however, we deem it unnecessary to burden this opinion with a reproduction of them. This cause was submitted to the court sitting as a jury and the issues were found for the defendant. Timely motions for new trial and in arrest of judgment were filed and by the court overruled. Judgment was rendered for defendant in accordance with the finding of the court, and from this judgment the plaintiff prosecuted this appeal and the record is now before us for consideration.

OPINION.

The record in this cause discloses but one legal proposition for our consideration, that is, in which the propriety of the action of the trial court is challenged in allowing the defendant credit on the note in suit, for the five thousand one hundred dollars stock in the Oregon County Bank, which was held by the plaintiff as collateral security and while being so held became worthless.

It is practically conceded that there was two thousand dollars realized from the Hardware stock, which was held by the plaintiff as collateral; therefore, our attention will be directed to the correctness of the action of the court in allowing credit upon the note for the Oregon County Bank stock. The trial court in effect held that as the plaintiff permitted the Oregon County Bank to become insolvent and the stock held by it as collateral security for the note sued on to become unavailable, the plaintiff should stand the loss of such stock.

We have carefully read in detail the testimony as applicable to this subject, and there is no escape from the conclusion that, if plaintiff had undertaken to sell this stock at the time suggested by Captain Sitton, it would have realized its full value and been amply sufficient, together with the Hardware stock, to have fully satisfied this note. The testimony of Captain Sitton, who was acting as agent of his wife and daughter, who had executed this note, stands absolutely without any contradiction, and in our opinion his testimony can only be treated as a direction to the plaintiff who held this stock as collateral to dispose of it, and informed them that it could be sold for one hundred cents on the dollar. Plaintiff offers no reason why the suggestion to dispose of this stock was not followed, and there is no valid reason assigned why the stock was not sold.

204 Sup—9

Plaintiff simply held it as collateral, and it was its plain duty when the defendants, through their agent, Captain Sitton, insisted that the stock should·be sold and applied to the payment of this note, to do so. It does not answer the contention of respondent for appellant to say that the only way in which Captain Sitton would have been authorized to have sold this stock was to first tender the amount due upon the note. His testimony does not bear out the insistence of the appellant that the defendants were trying to get possession of the collateral. His testimony, when reasonably construed, simply means that the collateral would remain in the possession of the plaintiff and he simply asked permission to contract for the sale of it and the money realized from such sale to be turned over to the plaintiff and applied to the payment of this note and the stock transferred to whomsoever it might be sold. In other words, the testimony of Captain Sitton cannot be regarded as wanting to obtain the possession of the stock without any sale of it, but when fully considered it was a clear direction to those who had a right to make directions in relation to a collateral that belonged to them, that it be sold when it would bring its full value. Plaintiff refused to take any steps towards the sale of this stock when its full value could have been realized and defendant's obligation fully satisfied. This stock afterwards becoming worthless, in our opinion the trial court properly and correctly held that the plaintiff should stand this loss.

. The law upon this subject is very correctly stated in 22 Am. and Eng. Ency. Law (2 Ed.), 899, where it is said in the text and fully supported by the cases cited in the notes, that "it is well settled that when a chose in action, such as a bond, note, or accepted order on a third person, is transferred and delivered to a creditor as collateral security, it is the duty of the pledgee to use reasonable care and diligence to make

such collateral available; that he is bound to use proper exertions to render the collateral effectual for the purpose for which it was pledged; that if necessary he must bring an action against the maker of the collateral; and, that if, through his negligence or wrongful act or omission, the collateral is lost, he is accountable and liable to the pledgor ·in the same manner as a pledgee of goods and merchandise is liable to the pledgor if they are lost or destroyed through the pledgee's failure to give them the necessary protection and care.'' [Hanna v. Holton, 78 Pa. St. 334; Bank v. Thompson, 71 Fed. 113.]

In State Bank of St. Louis v. Bartle, 114 Mo. 276, it was expressly ruled that it was the duty of a party holding a collateral as security to carefully and faithfully perform all acts necessary to make the collateral available, and that it was a duty owed to the surety, and, failing in it, by which the collateral is lost, the surety will be discharged to the extent he is thereby injured. [Taylor v. Jeter, 23 Mo. l. c. 250; Brandt on Suretyship (1 Ed.), secs. 384-387; Kemmerer v. Wilson, 31 Pa. St. 110; Pickens v. Yarborough's Adm'r, 26 Ala. 417; Grisard v. Hinson (Ark.), 6 S. W. 906.]

The learned text-writer, Mr. Brandt, on Suretyship and Guaranty (1 Ed.), sec. 384, thus states the law applicable to this subject: ''If the principal places in the hands of the creditor, as collateral security for the debt, an obligation of a third person, the creditor is, without any special agreement to that effect, bound to use due diligence to collect the same, and to charge all the parties thereto, and if anything is lost on account of his failure to use such diligence, not only the surety but the principal also is discharged to the extent that he is injured. With reference to this it has ben said that: 'The assignor of collaterals parts with his control over them, and the assignee should be bound to use proper

exertions to render them effectual for the purpose for which they were assigned. The principle is that when a right of action or a judgment is transferred by a debtor to his creditor, to secure the debt, or as collateral security, ordinary diligence must be used to make it available, and if a loss occurs by negligence, even passive negligence, which is unreasonable and results in loss, it will be a good defense to a suit on the original debt.' It has also been said that 'the necessary care and attention should be bestowed to preserve the value of whatever is thus voluntarily, and with a view to one's own interest, taken under his control.' It has been held that the question 'what is due diligence' is, when the facts are ascertained, one of law; and where a note was due when the creditor took it as collateral, and the maker was then solvent, but the creditor did not bring suit on it for three months, when the maker had become insolvent, it was held that this was such negligence as charged the creditor with the loss of the note.''

While it may be said that the plaintiff in this cause had absolute dominion over this bank stock as collateral, as long as the note of defendants remained unpaid, yet it by no means follows that the defendants, who are the real owners of the collateral, are absolutely deprived of all interest in it, and it was the plain duty of the plaintiff in this cause who could only be legally interested in the collateral to the extent of having the proceeds of it applied to the payment of the note in suit, and the Oregon County Bank being solvent, and the pointed demand being made by the defendants, who were particularly interested in this collateral, that it be sold and the proceeds applied to their note, in our opinion it was the plain duty of the plaintiff to then and there sell this stock for its par value and apply the proceeds to the payment of the note, and their failure to do so, and the bank subsequently becoming insolvent, and the stock worthless, in our opinion con-

stitutes such negligence as fully warranted the trial court in crediting the amount of such loss upon the note.

We have carefully analyzed this record and the judgment of the lower court was clearly for the right party, and it should be affirmed, and it is so ordered.

All concur.