## UNION COLD STORAGE & WAREHOUSE COMPANY, Appellant, v. W. H. PITTS, Respondent.

Springfield Court of Appeals, December 11, 1913.

1. **APPELLATE PRACTICE: Incomplete Record.** Where the record states simply that "objections and exceptions were made to the modification of the instructions," but does not disclose what modifications were made or by whom or at whose request the instructions were given, *held* that there was nothing before the court for review.

2. **PLEDGES: Pledgor and Pledgee: Liability.** Plaintiff, a cold storage and warehouse company, received from defendant certain produce for storage and as a pledge or security for money advanced to defendant. Later defendant directed plaintiff to sell same to a third party who was ready to purchase at a price sufficient to repay plaintiff the money advanced to defendant. Plaintiff, without good reason, refused to sell the produce as directed, but later sold it for a less sum which was inadequate to pay plaintiff for money advanced. Plaintiff *held* liable for the loss sustained by defendant. *Held,* also, that plaintiff was liable for conversion.

Appeal from Polk County Circuit Court.—*Hon. C. H. Skinker*, Judge.

AFFIRMED.

*W. W. Wood* for appellant.

(1) Plaintiff was not required to sell the produce on notice or at the time the notes were due, even though authorized or requested to sell. Story on Bailments, sec. 308; Franklin Sav. Inst. v. Preetorius, 6 Mo. App. 470; Muller v. Nichlos, 50 Ill. App. 663; 31 Cyc. 828, 873; Lake v. Trust Co., 90 S. W. 847; Bank v. Waddell, 85 S. W. 417; Bozett v. McClellan, 48 Ill. 345; Furness v. Bank, 147 Ill. 570; Newson v. Doris, 133 Miss. 343; Robinson v. Hurley, 11 Iowa, 410; Elevator Co. v. Betcher, 42 Minn. 210; O'Neil v. Wigham, 87 Penn. 394; Jones on Collateral Securities, sec. 606. (2) Plaintiff had the right to refuse to turn the produce over on the order of defendant before the advances and charges were paid or the full amount tendered. Jones on Collateral Securities, sec. 594; Schoff v. Fries, 90 Mo. App. 111; McClintic v. Bank, 120 Mo. 127; Nevis v. Moore, 221 Mo. 330; Henry v. Eddy, 34 Ill. 508; Lewis v. Mott, 36 N. Y. 395; Cumnock v. Savings Inst., 142 Mass. 342.

*Rechow & Pufahl* for respondent.

(1) Where the pledgor directs the pledgee to sell the collateral and apply the proceeds on the debt, or permit him to sell it, and the pledgee refuses or neglects to do either, the pledgee cannot escape the loss resulting from a failure to sell, by the fact that the pledgor did not pay the debt. Bank v. Kilpatric, 204 Mo. 119. (2) If the pledgee fails or refuses to sell and there is any loss, the pledgor is discharged to the extent that he is injured. Bank v. Kilpatric, 204 Mo. 130, and cases cited on page 130 and 131. Benedict

& Co. v. Grain Co., 80 Mo. App. 449. (3) It is the duty of the pledgee to use reasonable care and diligence to make the collateral available; and if through his negligence or wrongful act or omission, the collateral is lost or destroyed, he is liable to the pledgor. Merle & Co. v. Hascall, 10 Mo. 408; Taylor v. Jeter, 23 Mo. 250; Bank v. Bartle, 114 Mo. 276; Bank v. Kilpatric, 204 Mo. 129; Dibert v. D'Arcy, 248 Mo. 617, 154 S. W. 1125; Lakenan v. Trust Co., 147 Mo. App. 48; Benedict & Co. v. Grain Co., 80 Mo. App. 449; Bernet & Craft v. Hockady, 61 Mo. App. 627; Remsen v. Beekman, 25 N. Y. 552; Lichtenthaler v. Thompson, 15 Am. Dec. 581; Cooper v. Simpson, 41 Minn. 46, 16 Am. St. Rep. 667; Rumsey v. Laidley, 34 W. Va. 721, 26 Am. St. Rep. 935; Montague v. Stelts, 37 S. C. 200, 34 Am. St. Rep. 736. (4) No exceptions were saved to the giving of any of the declarations of law. The only exception saved is to the modification of said instructions. There is nothing to show that any instruction was modified. (5) No point is made in the motion for new trial about the modification of instructions.

ROBERTSON, P. J.—Plaintiff alleges in its petition that it is engaged in the cold storage and warehouse business in the city of Chicago and that at the special instance and request of the defendant it advanced to him the sum of $3300 for which the defendant executed and delivered to it five promissory notes aggregating said sum and that the defendant held in storage with plaintiff in Chicago produce designated and described in various invoices mentioned in said notes which was to be held by the plaintiff as collateral security for said notes; that the collateral contract in said notes provided that the plaintiff should be authorized to sell said produce or any part thereof upon maturity of the notes or at any time thereafter or before in the event that said security depreciated

in value in the opinion of the plaintiff, and that such
sale might be made privately or publicly, without ad-
vertising or giving any notice to the maker of the
notes, and plaintiff should apply the proceeds to the
payment of the notes, or any other liability of the
defendant to plaintiff, including interest and all ex-
penses, and that in case the proceeds so derived were
not sufficient to cover the principal, interest and all
expenses, the defendant should pay the deficiency
forthwith after such sale.     Plaintiff further alleges
that the produce designated in said invoices consisted
of dressed poultry to the amount of $2551, which the
plaintiff sold under the terms of said notes and ap-
plied said amount to the credit of the defendant on
the said notes, leaving a balance due of forty-nine dol-
lars on one of the notes and $700 on another of the
notes, exclusive of interest on all of said notes.  The
plaintiff further alleges that the defendant deposited
with it other and further warehouse warrants for pro-
duce to the value of $717.24, which were sold by the
plaintiff, and that the defendant paid in cash the sum
of $9.35, making the total amount received on addi-
tional collateral $726.59; that there was charged
against the defendant interest on said notes amounting
to $173.71, insurance on produce in storage $34.47,
storage charge $293.16, cartage, labor and packing
$46.21, making a total of $547.55, leaving a balance
due the defendant on said additional collateral account
of $179.04, and that after deducting the said last
named sum from the balance due on said promissory
notes there was a balance of $569.96 due and owing
the plaintiff from the defendant, for which amount it
prayed judgment, together with interest from April
19, 1912.

The defendant filed his answer to plaintiff's pe-
tition alleging as a counterclaim that in the year 1910
he stored with plaintiff in Chicago chickens and tur-
keys of the total value of $4851.38, and that on or about

June 21, 1911, he demanded possession of said turkeys and ordered and directed the plaintiff to deliver same to another company in Chicago, and that on or about June 29, 1911, he demanded possession of all of said chickens and ordered and directed the plaintiff to deliver the same to a third company in Chicago, and that these two companies demanded possession of said fowls so sold to them and that the plaintiff failed and refused to deliver any of them but converted the same to its own use, all of which said poultry was then of the reasonable value of $4851.38; and that by reason of the failure and refusal of the plaintiff to deliver the property as aforesaid the defendant has been damaged in said sum, for which, together with interest at the rate of six per cent per annum from June 29, 1911, the defendant asked judgment. And for another cause of action against the plaintiff the defendant alleged that he was in possession of the property aforesaid of the value above stated and that plaintiff without any authority converted the same to its own use to his damage in the amount above stated, for which judgment, with interest, was prayed.

Plaintiff filed its reply in the nature of a general denial, the trial on the issues was had to the court and judgment rendered and entered by the court against the plaintiff on its petition and in favor of the defendant on his counterclaim in the sum of $670, after allowing plaintiff credit for all sums advanced to defendant on the promissory notes together with interest, storage, expense of sale, and all claims for money advanced and expended for and in behalf of the defendant. From this judgment the plaintiff has appealed.

The testimony discloses that for a number of years previous to the transactions involved here the defendant has been engaged in collecting, dressing and shipping fowls to the plaintiff for cold storage in its warehouse in Chicago and for sale on commission, and that

the plaintiff would advance to the defendant upon such property so shipped and stored certain sums of money agreed upon between them, which the defendant would collect by sight draft and the plaintiff would thereafter forward to the defendant, for his signature and return, an agreement in the nature of a promissory note and a collateral security contract covering the warehouse warrant for the merchandise stored. Prior to June 21, 1911, the price of chickens and turkeys in Chicago began to decline and the defendant became anxious to dispose of the poultry and discharge his obligation to the plaintiff. He thereupon agreed with the two firms above referred to for the sale of the property and so instructed plaintiff and directed plaintiff to deliver same to them, with the understanding that those parties would pay plaintiff the purchase price thereof, which was more than sufficient to pay all of the obligations owed by defendant to plaintiff, and that the plaintiff refused to so deliver the property but thereafter disposed of said produce, as it contends, under its collateral agreement, with the result set out in the petition. The only reason plaintiff gave for not complying with defendant's request was that one of its officers did not like the parties to whom the defendant had sold the property, although there is no testimony introduced in behalf of the plaintiff which discloses that these parties were not financially responsible and entirely reliable business concerns and although in fact many sales in the same manner had theretofore been made by the defendant to them. The value of a portion of the property alleged to have been converted by the plaintiff was made up of a number of consignments of turkeys which the defendant alleges to have been of the value of $1197.86. At no time had the plaintiff ever made any advancement to the defendant on account of these shipments.

The trial proceeded upon the theory in behalf of the plaintiff that it was not bound to sell the property

at the market value in June, 1911, for the benefit of
defendant and consequently objected, and insists here
upon the objection, that the court erred in permitting
the defendant to prove the market value of the prop-
erty at the time it is alleged the plaintiff converted
the same. The defendant's position here is that it was
encumbent upon plaintiff under the circumstances dis-
closed in this case to dispose of the property at the
time he requested the sale and that the plaintiff could
not arbitrarily refuse to comply with his request and
thereafter sell the property upon a declining market
and arbitrarily compel the defendant to suffer loss by
reason thereof.

At the conclusion of the testimony the court de-
clared the law to be that if the plaintiff received the
produce in question, made advancements to the defend-
ant thereon, held the warehouse receipts as collateral
security on the notes given for such advances, then
the plaintiff had the right to retain the possession of
the property until the sums advanced by it, together
with interest due thereon according to the terms of
the notes, as well as all proper charges for storage,
were paid or tendered, that plaintiff was not required
to turn the property over to the defendant or any other
person on his order unless when the demand for the
property was made the full amount of the advances
and all proper charges against said property were ten-
dered, but that if on or about June 21, 1911, the plain-
tiff received notices or orders from the defendant to
turn over said produce to certain other dealers in Chi-
cago, if plaintiff understood therefrom that defendant
desired said produce sold and marketed, and that plain-
tiff did not honor said orders, then it was the duty of
the plaintiff to proceed with reasonable diligence to
sell such produce and apply the proceeds upon defend-
ant's indebtedness, and that if plaintiff arbitrarily
held said produce for months after it so understood,
that then the plaintiff would not be permitted to charge

the defendant storage for said produce while the same was so arbitrarily held and that the plaintiff was liable to defendant for losses caused by declines in the market while said produce was so arbitrarily held by it.

The court also declared the law to be that in making sales of produce under the terms of the collateral contract plaintiff was not required to obtain the highest market prices for the produce sold, but that it is only required to use ordinary care to obtain a reasonable market value at the time and place of sale, and that the presumption attains that plaintiff did use ordinary care and the burden was on the defendant to show negligence, or want of ordinary care, on the part of the plaintiff in making such sale.

These declarations of law were given, as we view the record, without any objection on behalf of the plaintiff. The declarations of law as they appear in the record are preceded with this statement: "Whereupon the court declared the law to be as follows," and at the conclusion of the declarations of law appears the following statement: "To the modification of said instructions and each of them plaintiff objected and excepted at the time." What modifications, if any, were made or by whom made, or who requested the declarations of law, if anyone, or whether they were given on motion of the court, is not disclosed by the record.

It, therefore, becomes essential for us to determine only whether there is sufficient evidence in the record upon which to base these declarations. If the case was decided by the court on the wrong theory, as shown by these declarations of law, and without objections on behalf of the plaintiff, then there is nothing before us to review as there are no refused declarations of law and none given in behalf of the defendant. We may, however, state that we are not led to an affirmance of the judgment solely upon the ac-

quiescence of plaintiff in the declarations of law given by the court, but upon the whole record we are of the opinion that the judgment is for the right party.

It was the duty of the plaintiff under its agreement and the circumstances disclosed by the testimony to use ordinary care and diligence to protect the defendant from any unnecessary loss on his property in its custody and if, through its negligence or wrongful act or omission, there was a depreciation thereof to the injury of the defendant, the plaintiff should be held, as it was in this case, for such loss. [Benedict & Co. v. Inland Grain Co., 80 Mo. App. 449; National Exchange Bank v. Kilpatric, 204 Mo. 119, 102 S. W. 499.]

That the defendant under the facts disclosed in this case was entitled to maintain his counterclaim in the nature of an action for conversion is well settled in this State. [Schaaf, Admr., v. Fries, 90 Mo. App. 111, 116; Peoples State Savings Bank v. M. K. & T. Ry. Co., 158 Mo. App. 519, 528, 138 S. W. 915.]

Brushing aside all formalities and technicalities presented in this case and looking at it solely with a view of administering justice between the two parties, it would be unconscionable to adjudge, we think, that the plaintiff should be permitted to arbitrarily hold the property stored with it and refuse to dispose of it, at the request of the defendant, in a manner that would enable it to immediately realize a sum sufficient to pay all of defendant's indebtedness to plaintiff and then permit it to sell the property for a sum insufficient therefor, and allow it to recover any balance so due from the defendant. The judgment of the trial court is affirmed. *Sturgis, J.,* concurs. *Farrington, J.,* concurs in result in a separate opinion.

## CONCURRING OPINION.

FARRINGTON, J.—The decision in the case of National Exchange Bank v. Kilpatric, 204 Mo. 119,

102 S. W. 499, to the effect that the holder of collateral security is required to sell the same under the terms of the contract of pledge when instructed to do so by the pledgor, requires that I concur in the affirmance of this judgment, the circuit court having found upon sufficient evidence that such demand was made. But it is my opinion (without any disrespect) that the ruling of our Supreme Court in the Kilpatric case is opposed to the great weight of authority in other jurisdictions where, according to my view, the better reasoned cases on the subject are found.