FRANKLIN TRUST COMPANY (LUTHER A. HARR, SECRE-
TARY OF BANKING OF THE STATE OF PENNSYL-
VANIA, SUCCEEDING WILLIAM D. GORDON, FORMER
SECRETARY OF BANKING OF THE STATE OF PENN-
SYLVANIA), PLAINTIFF-APPELLANT, v. EDMUND
GOERKE, DEFENDANT-RESPONDENT.

Argued October 24, 1935—Decided May 20, 1936.

For the plaintiff-appellant, *Meyer L. Sakin* and *A. Harry Moore.*

For the defendant-respondent, *John J. Stamler.*

The opinion of the court was delivered by

BODINE, J.   The appellant brought this action to recover the balance due upon a demand note secured by collateral. Respondent admitted the execution of the note, but denied liability thereon and recovered by way of counter-claim the losses which he had sustained by reason of the alleged negligent failure of the bank to sell his collateral at a time when it would have brought sufficient to have more than liquidated the amount of his indebtedness.   The theory upon which recovery was had was that the bank was negligent in not having sold the collateral when requested so to do.   The note in suit did not obligate the bank to make any sale.   The proofs indicated that the respondent was nervous because there had been a severe break in the stock market.   The officers of the bank were hopeful.   Besides, they had many customers, the value of whose collateral would be disastrously affected by placing upon the market large blocks of like securities.   The respondent repeatedly urged the sale, but took no affirmative steps to accomplish his wishes.   There is some evidence also that one of the officers in charge of the loan said he would cause sales to be made in small lots as he was able.

We are now concerned only with the legal error in submitting the case to the jury upon the theory that the respondent was entitled to recover, if the proofs indicated that the pledgee was guilty of negligence in failing to sell the securities pledged after having been requested so to do, and at a time when the money realized would have been more than sufficient to liquidate any indebtedness to secure which the stocks were pledged.

It was but recently stated by Mr. Justice Heher, for this court, in *Bardsley* v. *First National Bank, &c., Montclair,* 111 *N. J. L.* 512: "As stated by Mr. Justice Williams in *Glidden* v. *Mechanics' National Bank,* 53 *Ohio St.* 588; 42 *N. E. Rep.* 995, 998; 43 *L. R. A.* 737: '*Under a contract of pledge, the right of the pledgee to retain possession of the property continues until the debt or engagement for the security of which it was pledged has been discharged by payment or performance, or a tender and demand for its return.* \* \* \* On the other hand, in the absence of any stipulation to the contrary, *it is the duty of the debtor to seek the creditor at the proper place, and pay the debt, or tender its payment before he is entitled to receive back the pledge.*' "

It is perfectly clear to us that the case of *Peoples National Bank* v. *Ginsburg,* 108 *N. J. L.* 415, is not to the contrary. It was there definitely stated that the assertion of the proposition that the refusal by a pledgee to sell stocks, after request, constituted proof of negligence was without legal justification. What was subsequently stated by the opinion writer as to the necessity of a tender of the difference between what was due and what the securities would bring was unnecessary to the decision of the case and could not have been intended as a departure from the general statement made, because no authorities whatever were cited or discussed. The statement was obviously for no purpose other than to answer the argument of counsel.

*Jones on Collateral Securities,* § 606, is as follows: "A pledgee is not obliged to sell the pledge even when requested so to do by the pledgor, for his only right is to redeem. Therefore in a case where the pledgor demanded a sale of the

greater portion of the property pledged upon an offer procured by him, and the pledgee refused to make the sale, and it also appeared that if the sale had been made and the money collected thereon, the proceeds of the sale would have paid the debt secured excepting a small sum, and the remainder of the property pledged would have sold for a greater sum than the balance remaining unpaid, but all the property was afterward sold by the pledgee for a sum much less than the debt, leaving a deficiency to be paid by the debtor, it was held that the pledgee was not liable for the loss occasioned by his refusal to sell as requested, this refusal being made in the exercise of an honest judgment on his part."

The rule is also stated in 49 *Corp. Jur.* 948, § 98, as follows: "In the absence of an agreement to such effect, the pledgee has no right to sell the pledged property before maturity of the debt.   *   *   *   (Section 99). In the absence of a special agreement, a pledgee is not required, nor can he be compelled, to sell the pledged property and apply the proceeds on the debt before its maturity, even though he has authority to sell and has been requested to do so by the pledgor." And on page 997, section 247, it is said: "Although the pledgee, for the pledgor's default, is entitled to sell the collateral, in the absence of a special agreement, he may sell or not at his option, and is under no legal obligation to make a sale, and is not liable for a depreciation in value of the property after the failure to sell; but is liable only for damages resulting from bad faith or negligence." The negligence referred to would seem, by the weight of authority, to be negligence in the manner of selling or in the care of the property offered for sale.

"In the absence of contract the duty of the pledgee is to exercise ordinary care, and he is liable only for neglect of such care." *Cooper* v. *Simpson (Minn.)*, 4 *L. R. A.* 194.

The Supreme Court of Pennsylvania has but recently held in *Gordon, Secretary,* v. *Mitchell,* 182 *Atl. Rep.* 386, a "creditor-pledgee is under no duty to sell collateral upon request or order of debtor-pledgor."

The note in question did not require the pledgee to make

sale of the securities pledged although it had power so to do. Proof of frequent requests to sell the collateral was not competent to vary the terms of the written contract. *Culver* v. *Wilkinson*, 145 *U. S.* 205. There was no proof, nor was there any contention at the trial that there was a new contract by which the pledgee was obliged to sell. If a new agreement existed it should have been pleaded and proved. The pledgor's note had not been called and it was not due until demand. The bank, in the absence of a new contract, was obviously under no obligation to sell before demand for payment and refusal thereof. The pledgor by his repeated requests could impose no new duty upon the bank, unless in compliance therewith it had sold in a careless manner or some loss had been incurred for which it might have been held liable. He, on the other hand, if sincere in his desire to sell the pledged property, was at perfect liberty to make a new contract or order any broker to sell the same, and upon tender of the amount due upon his obligation the pledgor would have been obliged to surrender the pledged property for transfer. Until that was accomplished, the pledgee had a right to retain possession as the pledgor had agreed. *Bardsley* v. *First National Bank, &c., Montclair, supra.*

The headnote, supported by the text, in *Field* v. *Leavitt* (*N. Y.*), 5 *J. & S.* 215, is as follows: "In a case where personal property has been pledged to secure the payment of a note, and it appears that the pledgor and the parties to the note united in demanding a sale of the greater portion of the property pledged upon an offer procured by them, and the pledgee and owner of the note refused to make the sale, and it also appeared that if such sale had been made, and the money paid thereon, the proceeds of the sale would have paid the note except $200, and the remainder of the property pledged would have sold for a greater sum than the balance of the note, whereas, afterwards, all the property sold for a much less sum than the note, and left a deficiency to be paid by the parties. Held, by the court, that even assuming that the proposed purchaser was solvent and ready to make the purchase, there being no proof in the case that the refusal

to sell by the pledgees was not the exercise of an honest judgment on the part of the pledgees; having regard to their own rights and interests as well as those of the parties to the note and the owners of the property, the most that is shown and could be claimed from these facts, is the conclusion that the pledgees made a mistake, but no liability could ensue therefrom under the circumstances."

In the instant case, the pledgor cannot say he relied upon the representation that the pledgee would sell his securities to his damage. He knew all along that the stock was not sold, because he never received credit for the proceeds thereof, and further he continued, until the bank was closed, to pay monthly interest in recognition of his debt which he well knew would have been wiped out if his request had been complied with. Besides, if only part had been sold there would have been a reduction in interest. If he may recover by reason of a default in the pledgee's unassumed obligation, he is in a position where he may enjoy the profits from his securities if the market goes up and look to the pledgee for the difference if the market goes down—a very desirable position to attain certainly a few years ago by a little talk and the failure to take a definite step, such as ordering a broker to sell stock and liquidate the indebtedness. To subject a banking corporation to such a contingent liability, which would not appear upon its books, when examined by its directors or the state banking authorities, seems without reason and likely to cause a great loss to depositors and stockholders alike. Even though a bank in these days may easily employ a reputable broker to make sale of stock exchange collateral, there seems to be no reason to depart from the established rule that the pledgee is entitled to hold the pledged property until the debtor seeks him out and pays the debt and is not liable for damages because acts were not performed which appear not to have been legally assumed.

The judgment is reversed.

PERSKIE, J. (Dissenting.) My study of the case leads me to the conclusion that the judgment should be affirmed.

The question requiring decision in this case is whether, under the particular proofs here exhibited, the bank, pledgee, was liable to defendant, pledgor, in damages, for its failure upon pledgor's direction, to sell the collateral which he hypothecated with it as further security for the payment of his note, although the bank did not, in the first instance, agree so to do.

The theory or basis upon which the case was tried, and upon which liability was fastened upon the bank, was that it was responsible and answerable to the pledgor for its actionable negligence in the premises.

Bearing this in mind, let us see what the facts disclose. We learn that appellant-pledgee was a banking corporation of the Commonwealth of Pennsylvania; its place of business was in Philadelphia. On October 5th, 1931, the liquidation and winding up of its affairs, for reasons not here involved, were placed in the hands of the secretary of banking of that commonwealth. During the aforesaid process, he caused suit to be instituted here against defendant to enforce the payment of his note. This note was dated December 26th, 1930, for the sum of $18,000 and was collaterally secured. The collateral (two hundred shares of The Fair Company; one thousand eight hundred and twenty-five shares of City Stores, common; seventy shares of City Stores "A"; one hundred shares of Lit Brothers (new) and twelve shares of Lit Brothers, preferred, had an aggregate value at the time of $50,000. At the time of suit (December 23d, 1933), it was alleged that there was due on said note $16,941.20 with interest from October 1st, 1931.

Defendant's answer admitted the execution of the note but denied that there was anything due thereon. In addition to that denial, defendant set up a counter-claim against the bank. This claim consists of two counts. The first is based on the refusal of the bank to sell the collateral at the direction of the defendant. The second is based on an alleged conversion of the collateral.

Thereafter, application was made to the then Circuit Court judge, Henry H. Eldredge, to strike the answer and counter-

claim and for entry of summary judgment on the ground "that the allegations contained in said answer and counter-claim are untrue and sham and that the allegations contained in said answer and counter-claim are frivolous." The application was denied on March 5th, 1934. But before the denial thereof, as aforesaid, plaintiff filed a reply to the answer and a denial to the counter-claim.

We learn more. The proofs at the trial disclose, and it was open to the jury to find, that the defendant was very much disturbed and concerned about his loan with the bank. He viewed with particular apprehension the daily downward trend of the value of his stocks. He felt very nervous about continuing to hold such a large block of stock on borrowed money. He, thereupon, conferred with Mr. Duphinee, who was the vice-president of the bank in charge of this item of business, explained to him his financial position, his apprehensions, and directed that the stock be sold. Mr. Duphinee pleaded and urged defendant not to sell. This plea appears to have been based on the fact that defendant, as a friend of the bank, ought not to force it to sell. The stated reason was that to sell would further depress the market value of the stock, and thus adversely affect the value of like collateral held by the bank on loans made to many other of its borrowers. But defendant persisted that the stock be sold. Although the proof indicated a fairly active daily market for the sale of the securities, Mr. Duphinee agreed, for the bank, that he would sell "in small quantities as best he could."

Defendant left for the south on a business trip. He returned the early part of May, 1931. He ascertained that the bank had not sold his stock. Whereupon he wrote this letter (*Exhibit D-3*):

"May 11, 1931.

Mr. A. V. Duphinee,
Vice Pres. Franklin Trust Company,
Philadelphia, Pa.
My dear Mr. Duphinee:

I was very much disturbed over the fact that you did not sell my collateral and liquidate my loan, and I cannot agree

with you that during these trying times, as you put it, a friend of the bank, should not, for selfish purposes throw on the market a large block of City Stores stock, as it will tend to break the market and affect many of your customers who have pledged their stock with the bank as security for their loans.

As I told you more than three months ago, I felt very nervous about continuing to hold this large block on borrowed money and therefore requested your good bank to sell it in order to liquidate my loan. I can see your point of view; if my circumstances were different, that is, if my stock was fully paid for and I had not outstanding obligations to meet you may be right, but unfortunately I am not in that situation; *I therefore urge a prompt sale of my collateral and use the proceeds in the liquidation of my note and thus save me from further loss.*

I note that the stock dropped yesterday and that if same is sold promptly, at a price even much lower than quoted yesterday, your loan will be fully liquidated and I will receive some money which I can use to very good advantage.

Regretting that my present financial situation does not permit me to follow your kind suggestion, I remain,

Very truly yours,

EDMUND GOERKE."

In addition thereto defendant called Mr. Duphinee on the telephone and confirmed his written instructions. Again defendant left for the south on business. And when he returned he found that the bank had not sold his collateral and that it had been taken over in pursuance of state authority.

We learn further that the market value of the stock, as of February and May, 1931, was $30,000. At the actual dates of trial (January 30th and 31st, 1935), and after a sale of the collateral during the process of liquidation, there was still due on the note the conceded amount of $15,776.15.

I think that it should also be observed notwithstanding defendant's directions to sell there was proof pointing to the

fact that he continued to pay the monthly interest on his loan from February, 1931, to October, 1931.

The trial judge submitted the case to the jury on the theory of actionable negligence. And, as requested by counsel of appellant, charged (second request), that the defendant was bound to show, before he is entitled to damages on his counter-claim, *"that the bank was guilty of negligence; and that the mere failure to sell the collateral is only some evidence of negligence and not conclusive."* The court, as further requested, also charged (fourth request) that if the defendant made "interest payments after the request was made by him to the bank to dispose of his collateral, and which collateral was not sold, that such conduct is some evidence of the acknowledgment of his indebtedness to the bank." He, however, refused, *inter alia*, to charge:

"First: The plaintiff, being the holder of the note, had the right in the event of default to sell the collateral at any time, without demand, in accordance with the terms of the note, and, the plaintiff was not duty-bound to dispose of the collateral at the request of the defendant unless the plaintiff and defendant entered into an agreement, which agreement in order to be valid in law would have to be supported by consideration. In this case there was no consideration to support any such agreement."

The jury returned a general verdict of $12,983, in favor of the defendant and against plaintiff. It is the propriety of the judgment based on that verdict that is here challenged.

Appellant argues here that it was reversible error for the trial judge to refuse to charge the first request of charge as aforesaid. This argument is based substantially on the same grounds upon which appellant based its argument on the application to strike the answer and counter-claim, and the motion to direct a verdict in its favor. Restated, this argument is that the collateral note embodies all of the contractual obligations beween the pledgor and the pledgee in the premises; that since this obligation contains no undertaking to sell the collateral upon the direction of the pledgor, the pledgee was under no legal obligation to do so. And, assuming that

the pledgee did, after the date of the collateral note, agree to sell the collateral there was no consideration to support that undertaking, and it was, therefore, unenforceable.

What was the effect here of pledgor's direction to pledgee to sell his collateral?

In our state we have no case directly on point; with us it is a question of first impression. The decisions of the courts of our sister states are not in accord. Some hold that in the absence of a contract varying the powers and duties of the parties, as a general rule, the pledgor may not make it the duty of the pledgee to sell the collateral by directing or requesting him to do so; and that a subsequent contract between the same parties varying the original undertaking must be supported by a consideration. But there is respectable authority to the contrary. See cases collated in *Annotation, tit. "Pledgee's Duty to Sell,"* 77 *A. L. R.* 379, 382, 384.

But I do not find it necessary here to decide whether in the absence of an agreement between the parties so requiring, a bare direction by a pledgor to a pledgee to sell the collateral and the bare refusal of the pledgee to do so, or the failure of the pledgee, who, under like circumstances, promised to sell but does not do so, renders the pledgee liable in damages to the pledgor for loss sustained on the theory of the breach of a contractual obligation. This was not the theory upon which this case was tried; it was tried solely on the theory of pledgee's negligence.

What then was appellant's duty in the premises on the theory of negligence?

My answer is that, "within certain limitations (*Irving* v. *Mutual Trust Co.,* 82 *N. J. Eq.* 629, 633; 90 *Atl. Rep.* 274, and *Union Trust Company of Pittsburgh* v. *Long,* 309 *Pa.* 470; 164 *Atl. Rep.* 346, 348), the pledgee was a trustee of the *res.* It was under the common law duty of exercising ordinary care in the premises; that ordinary care which a reasonably careful and prudent person (here a banking institution), should have exercised under the same or similar circumstances, and for the failure or neglect to exercise that care it was liable.

The case of *Bardsley* v. *First National Bank, &c., Montclair*, 111 *N. J. L.* 512; 168 *Atl. Rep.* 665, urged by appellant, is especially emphasized in the opinion of the majority. With great deference to my colleagues, I fail to see its application to the question involved in the case at bar. The quoted portion of that case treats merely of the reciprocal rights and obligations of the pledgee's right to retain, and the pledgor's right to a return of the collateral pledged. Obviously, none of these questions are involved in this cause.

In the case of *Peoples National Bank and Trust Company of Belleville* v. *Ginsburg*, 108 *N. J. L.* 415; 156 *Atl. Rep.* 491, it was held:

"* * * Normally the pledgee of stock is entitled to hold it as security for the payment of the debt so long as that debt remains unsatisfied, and, in order to entitle the pledgor to require a sale thereof by the pledgee, where the price produced by such sale would not satisfy the debt for which the stock was pledged, the pledgor, as a condition precedent, must pay to the pledgee such an amount of money as will, together with the price for which the stock is to be sold, satisfy the debt which the pledge was given to secure. It is admitted that no offer to do this was made by the defendants; and further, that they had not sufficient funds to make up the deficiency between the amount of the debt and the amount for which they had contracted to sell the stock."

It is contended for the pledgor that the unmistakable inferences to be drawn from that holding is that if a sale of the securities would be sufficient to pay the entire debt the pledgee must dispose of the collateral when requested to do so by the pledgor, and failure to do so constitutes actionable negligence.

We now learn from the majority opinion that what was said in the case of *Peoples National Bank, &c., Belleville* v. *Ginsburg, supra*, "as to the necessity of a tender of the difference between what was due and what the securities would bring" in order to entitle the pledgor to require a sale thereof by the pledgee was unnecessary to the decision of that case; that no cases are cited or discussed in the opinion in support thereof; and that it was merely an answer to argument of counsel.

Let us turn to the record of that case. That record discloses that the case was tried solely on the theory of alleged negligence on the part of the bank. That the bank was under a duty to exercise ordinary care; that liability could be fastened on it, if it breached that duty, for resultant damages, was conceded for the bank. What the court said on the issue as tried, was, therefore, proper. Nor do I think that an opinion of this court is less authoritative or binding simply because it neither cites nor discusses authorities. This court makes for authority.

The theory upon which this cause was tried finds support not only in the case of *People's National Bank, &c., Belleville*, v. *Ginsburg, supra*, but in other jurisdictions. For example in the case of *Amick* v. *Empire Trust Co.*, 296 *S. W. Rep.* 798; 53 *A. L. R.* 1064, the Supreme Court of Missouri held:

"* * * that the failure of the pledgee to comply with clear and positive directions of the pledgor, or principal debtor, to take prompt action to collect or sell the collateral and apply the proceeds upon the principal debt, constitutes such negligence on the part of the pledgee, or creditor of the principal debtor, as renders the pledgee liable to the pledgor in damages for any loss occasioned to the pledgor by such negligence on the part of the pledgee. The rule is so announced by this court in *National Exchange Bank* v. *Kilpatrick*, 204 *Mo.* 119; 120 *Am. St. Rep.* 689; 102 *S. W. Rep.* 499, and has been followed by the several courts of appeals in *Union Cold Storage and Warehouse Co.* v. *Pitts*, 176 *Mo. App.* 134; 161 *S. W. Rep.* 1182, and *First National Bank* v. *Hahn*, 197 *Mo. App.* 593; 198 *S. W. Rep.* 489. That such is the established law in this state is conceded by the brief of respondent filed herein." See annotation 53 *A. L. R.* 1095; 77 *A. L. R. supra; Van Zile on Law of Bailments* (*2d ed.*) 275, § 292; *Jones on Collateral Securities and Pledges* (*3d ed.*) 830, § 702; *Schouler on the Law of Bailments* (*3d ed.*) 214, § 208.

Again I do not, however, find it necessary to determine whether the mere refusal of a pledgee to comply with positive

direction to take prompt action to sell the collateral is in itself sufficient to constitute such negligence as to render the pledgee liable in damages to the pledgor for any loss sustained by the pledgor.

For, I think that the second request to charge, urged by counsel for appellant below and adopted by the court, sets forth a correct exposition of the law applicable in this case, namely, that before defendant could recover on his counterclaim he was obliged to prove *that the bank was guilty of negligence, i. e.,* that it did not exercise ordinary care in the premises, that ordinary care which a reasonably, careful and prudent banking institution should have exercised under the same or similar circumstances. And, *that the mere failure to sell the collateral was only some evidence of negligence and was not conclusive.*

I have detailed the proofs in this case. I did so to indicate that there was more, much more, evidence pointing in the direction of the bank's negligence than the bare refusal on its part to carry out the instructions of the pledgor to sell the collateral.

Why did the bank refuse to sell the collateral? Did it refuse because it took the position that it was under no legal obligation to do so? If that had been its position it could have so advised the pledgor. But this it did not do. Was it because in good faith and in the exercise of an honest judgment it had concluded that it was not the ordinary or careful prudent thing to do, or, was its refusal based on a purely selfish reason, namely, its fear of the effect of such a sale on the value of like collateral held by it? In other words, did the bank in bad faith, negligently place its own financial interest above its assumed and ordinary obligation in the premises? Did the bank act in good faith and honesty, or did it act in bad faith and dishonesty when it lulled the pledgor into a false sense of security when it agreed to sell his security "in small quantities as best it could" and then did nothing about it to his damage?

We are further told by the majority of some of the things *that may happen* if liability be fastened upon a bank under

the instant circumstances. It is said that such a "contingent liability" would not appear upon its books when examined by its directors or the state banking authorities, and that it is "likely to cause great loss to depositors and stockholders alike." That observation assumes that any other careful or prudent banking corporation would take the same position which was taken by the bank in this cause. Common banking experience is to the contrary. I dare say that any one who has ever made a secured loan of a bank knows that all the borrower has to do is to authorize the bank to sell his collateral, and if the market value of that collateral is sufficient to liquidate the loan, the bank does so. It is the common banking practice. And whether a liability imposed upon a bank based on negligence, as here, will cause great loss to its depositors and stockholders is, of course, uncertain and highly speculative. The facts of the given case will have to control. *But what did, in fact, happen to the borrower* here is altogether free from any uncertainty or speculation; his collateral (valued between $30,000 and $50,000) was entirely wiped out, and he still owes $15,776.15 plus interest from January 31st, 1935, on his original loan of $18,000.

I think that the refusal of the pledgee to sell at the direction of the pledgor, under the proofs here exhibited, and the proper inferences to be drawn therefrom, presented a jury question, *i. e.,* did the bank fail or neglect to exercise ordinary care in the premises and did that neglect or failure occasion the loss sustained by the pledgor?

To my way of thinking the proofs fully support the result reached.

Moreover, "a party may take alternative positions as to the certain matters or things, but not inconsistent ones with reference to the very same identical matter or things." *Cleaves* v. *Yeskel,* 104 *N. J. L.* 497, 504; 141 *Atl. Rep.* 814.

As stated, appellant requested and the court so charged (second request), that the pledgor could not recover unless he proved that pledgee was negligent; that pledgee's refusal to sell the collateral upon direction of pledgor was not conclusive but merely some proof of negligence. In other words,

the relevancy of pledgee's refusal to sell, subject to its probative force and effect, was conceded. Obviously, such proof could only be relevant if the pledgee was under a duty to the pledgor. It is now argued for appellant, upon the same proofs under which the second request aforesaid was made, that the pledgee was under no duty to the pledgor. This is not an alternative position; it is, clearly, an inconsistent position with reference to the very same identical matter. It cannot be maintained; it is untenable. *Robins* v. *Mack International Motor Truck Corp.*, 113 *N. J. L.* 377, 386; 174 *Atl. Rep.* 551.

Judges Hetfield, WolfsKeil and Rafferty join in this opinion.

*For affirmance*—PERSKIE, HETFIELD, WOLFSKEIL, RAF-FERTY, JJ. 4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, DEAR, WELLS, JJ. 9.